The People, *ex rel.* Osterhout, *vs.* Eli Perry, mayor of Albany.

Upon giving a bond, of the tenor and description specified in the 7th section of the act of April 11, 1848, for the protection of emigrants, any citizen having an office for the transaction of such business is entitled to a license authorizing him to exercise the vocation of booking emigrant passengers, as a matter of legal right.

It is for the mayor to whom application for a license is made, to decide whether the bond offered is satisfactory; but if it is, upon the execution and delivery of such a bond, and the payment of the license fee, the mayor has no alternative, but to grant the license, and if he refuses it, a peremptory mandamus may be issued.

Motion for peremptory mandamus. The relator stated that having provided himself with a public office in the city of Albany wherein to carry on the business of booking emigrant passengers, &c. he did, on the 13th of May, make application to the defendant for a license, pursuant to the 7th section of the act for the protection of emigrants arriving in the state of New-York, passed April 11, 1848; that he tendered to him the sum of $25, and a satisfactory bond, as required by the act; that, although the defendant acknowledged the bond to be satisfactory, he refused to give the license, for the sole and only reason, as alledged by him, that he had made up his mind not to give such a license to any person.

The defendant stated that he refused to grant the license for the reason that he supposed that it was a matter resting in his discretion, and that, in consequence of the frauds practiced upon emigrants passing through Albany, by persons heretofore licensed, he had concluded that the interest and safety of such emigrants would be better secured and promoted, if no such licenses were given or granted.

*J. K. Porter*, for the relator.

*M. McMahon*, for the defendant.

Harris, J. The 7th section of the act for the protection of emigrants, (*Sess. Laws of* 1848, *p.* 328,) prohibits the exercise

The People *v.* Perry.

of the vocation of booking emigrant passengers, &c. without the license of the mayor. That officer claims also that the section is to be so construed as to vest in him the power of granting or withholding such license, as in the exercise of his discretion, he shall see fit, while the relator insists that, upon complying with the requirements of the law, he is entitled to the license, as a matter of legal right.

But for this statute, any person might "exercise this vocation." The statute, therefore, is an innovation upon the common law, and it will not be presumed that the legislature intended that the innovation should extend any farther than the language of the act plainly declares. If it had been intended that the number of persons who should engage in the business, specified in the section, should be limited, or that the business should be altogether prohibited, in the discretion of the mayor, the rules of interpretation require us to suppose such intention would have been distinctly expressed. It is a cardinal rule, in the construction of statutes which change the common law, that the meaning shall not be extended beyond the fair import of the terms found in the act itself. In this act I am unable to perceive any thing which indicates a legislative intention to vest in the mayor any other discretion than that of determining whether or not the bond offered by the applicant is satisfactory.

The statute relating to excise, and the regulation of taverns, &c. besides requiring as in this case, a bond satisfactory to the commissioners, declares that a license shall not be granted, unless the commissioners are satisfied that the applicant is of good moral character; that he is of sufficient ability to keep a tavern; that he has the necessary accommodations to entertain travelers; and that a tavern is absolutely necessary for the actual accommodation of travelers, at the place where the applicant resides, or proposes to keep the same. (1 *R. S.* 679, § 6.) Under this statute, no man can claim a tavern license, as a matter of right, until all these questions have been determined in his favor. When they have, and a resolution has been entered in the book of minutes which the commissioners of excise are required to keep, to that effect, the applicant is entitled to his license, and

his rights may be enforced by mandamus. (*Ex parte Persons*, 1 *Hill*, 655.)

So, under the municipal powers of the city of Albany, the mayor is required to exercise a sound discretion, as to the persons to whom licenses shall be granted, and the number of licenses to be issued to tavern keepers, grocers, &c. (*City Laws, ed. of* 1842, *p.* 40, § 5.) While, in respect to cartmen, although they are to be licensed, no such discretion is to be exercised. In the latter case, as well as the former, the cartman is to execute a bond, with one or more sureties, to be approved, &c. as a condition of obtaining a license. And yet, it would not be pretended that, because the ordinance is permissive in its terms, declaring that "the mayor *may* license," &c. that officer would be authorized to withhold all licenses, on the ground that, in his opinion, it would be better that no licenses should be granted to *cartmen*. The ordinance, though *permissive* in form, is *peremptory* in its effect. The exercise of the power conferred, is an official duty, and the mayor would not be at liberty to withhold it.

I am inclined to think this is the case with the law under consideration. Until it was enacted, any citizen might, without restraint, exercise the vocation therein described. The legislature thought fit, for remedial purposes, to prescribe some safeguards against abuses in that particular kind of business. It therefore required that those who would engage in it should possess certain qualifications. They should keep a public office, and should obtain a license. This license could only be obtained by first giving a bond of the description and tenor specified. Upon complying with all these prerequisites, as I understand the law, any citizen has a legal right to exercise this vocation. Of course, it is for the mayor to decide whether the bond is satisfactory, but if it be, upon the execution and delivery of such a bond, and the payment of the license fee prescribed, I do not see that the mayor has any alternative but to grant the license.

It may well be, that it would have been better, if the legislature had authorized the mayor to grant or withhold licenses, in his discretion. The abuses that have been practiced upon the unwary foreigner have been most revolting in their charac-

ter. The attempt of the mayor to check those abuses deserves commendation. In determining to withhold licenses, it cannot be doubted that he has been actuated by honest and humane motives. Most willingly would I leave him to execute the law · according to his own views. But it is my duty, as well as his, to administer the law as it is, and not as we may think it *ought to be*. Convinced, as I am, that by the misconstruction of the statute the relator has been deprived of a legal right, I have no alternative but to award the remedy which the law has provided for the enforcement of that right. The motion for a peremptory mandamus must therefore be granted.

[ALBANY GENERAL TERM, May 25, 1852. *Harris*, Justice.]