# N. Y. COMMON PLEAS.

IN THE MATTER OF JAMES S. KELLY AND EDWARD THOMPSON
agt. THE EXCISE COMMISSIONERS OF NEW YORK.

*Inn-keeper — who are so as to entitle them to a license under act of* 1857 —
*Laws of* 1857, *chapter* 628, *section* 6 — *Mandamus.*

The keeper of a restaurant, who has no beds for the accommodation of travelers, is not an inn-keeper, and, therefore, is not entitled to a license under the act of 1857.

A lodging-house keeper is not an inn-keeper, because he may send out and procure cooked food for his guests. A mere lodging-house, in which no provision is made for supplying the lodgers with their meals, wants one of the essential requisites of an inn.

A free lunch at the bar, or the occasional *bringing* of victuals *from* a neighboring restaurant, will not transform a drinking saloon into a hotel or an inn. A house which does not contain the means of preparing food for the table in the ordinary way has not, to use the language of the act, "the necessary accommodations to entertain travelers."

But houses of entertainment in which the guest pays so much per day for his room, and takes meals or not, as he thinks proper, in the restaurant, paying separately for each meal as he takes it, where the restaurant forms a part of the establishment, and the house is kept under one general management for the reception of all travelers that may come, is an inn.

Under the act of 1857 the granting of licenses is a matter discretionary with the board of excise until such time as they shall have decided or determined that the applicant is a fit and proper person to receive a license, and that all the requirements of the law are met and complied with. Until such determination the question of granting a license is an open one, with the decision of which the court cannot interfere.

*Special Term, December,* 1877.

MOTION for a *mandamus* to compel the excise commissioners to give a license to James S. Kelly and Edward Thompson, to sell strong liquors.

Mr. Kelly, in his petition, states that he keeps a hotel at No. 40 West Houston street, and has complied with all the requirements of the law. He says that the commissioners, although expressing themselves satisfied with this fact, refuse to give him a license, solely on the ground that the cooking for the hotel is not done on the premises, which is claimed to be contrary to the law.

*Ex-judge Dittenhoeffer*, who appeared for the relators, contended that Kelly's place was an inn, which was defined to be a place where a traveler is to be furnished with every thing he wants, and it was immaterial where the articles furnished him came from. If such a distinction were made, it would deprive all hotels conducted on the European plan from the benefits of an inn. Counsel next discussed the power of the court to grant a *mandamus* in these cases, and in this connection referred to the case of *The People* agt. *Perry* (13 *Barb.*, 206), which was a decision of the general term, written by judge HARRIS, deciding that where all the requirements of the statute have been complied with, the relator was entitled to a license as a matter of strict right, and the same could be enforced by *mandamus*. The case of his clients, he said, came directly within the scope of this decision. He argued that the excise commissioners had no such unlimited powers as were claimed for them. Suppose, said he, that these men had refused to grant any license at all in New York. Could it be argued that their mere *ipse dixit* could build a Chinese wall around our great city, and thus practically exclude all travelers from its precincts ? It was not a question whether the trade was proper or not. It had been sanctioned by the law, and on the faith of this sanction these men had invested their all. There was no appeal, and unless the *mandamus* was granted the relators were remediless.

· Mr. *Diefendorf*, in reply, contended that the courts had no power to grant a *mandamus*, except to a person who had

a clear legal right to it.   He claimed, further, that the *man-damus* asked for could not be granted, inasmuch as the relators had another remedy by action at law.

VAN HOESEN, *J.* — It is admitted that Mr. Thompson is the keeper of a restaurant merely.   The keeper of a restaurant, who has no beds for the accommodation of travelers, is not an inn-keeper (*Carpenter* agt. *Taylor*, 1 *Hilton*, 193).   Therefore he is not, under the act of 1857, entitled to a license. Mr. Kelly keeps the Centennial House, which is situated on the north-easterly corner of Houston and Greene streets.   For five years last past he has kept in his house twenty beds for the accommodation of travelers or sojourners, whom he has entertained without any agreement as to the duration of their stay, or as to the terms of their entertainment.   He has not, however, any means of cooking upon the premises, and when viands are ordered by the guests he has to send and buy them from neighboring victualers.   It is conceded that Mr. Kelly is a man of good moral character; that the bond he has offered is good in form and with sufficient sureties; that Mr. Kelly has in his house twenty beds, with good and sufficient bedding for the accommodation of travelers; and that he has sufficient ability to keep an inn, tavern or hotel.   The board of excise has not, during the year 1877, determined to grant him a license, though for several years he has held a license in this city.   Upon the return of the order to show cause why a *mandamus* shall not issue requiring the board to grant a license to Mr. Kelly, the counsel for the board appeared and expressly waived all objections to any defects and imperfections in the relator's affidavits or proceedings, as he wished to obtain a judicial decision as to the duty of the board of excise with respect to the granting of licenses to persons who kept places of entertainment like the Centennial House.   At the very threshold of the argument, the question was raised whether the granting of licenses was not a matter discre- tionary with the board of excise.   If it were purely a matter

of discretion, it was conceded that the court should not, save in a case of gross and palpable abuse, attempt to control the exercise of that discretion. In *Ex parte Persons* (1 *Hill*, 655) the supreme court held that until a resolution that a license should be granted was actually entered on the minutes of the board, the question of granting a license was an open one, with the decision of which the court could not interfere. After the board has passed upon the question and entered on its minutes a resolution in favor of granting a license, a *mandamus* may be issued to compel the performance of the merely ministerial act of delivering the license (*The People ex rel. Osterhout* agt. *Perry*, 13 *Barb.*, 206). It is not necessary, under the present law, for the board to enter on its minutes a formal resolution, but it is still necessary that it should decide that the applicant is a fit and proper person to receive a license, and that all the requirements of the law are met and complied with, before the court can compel, by *mandamus*, the issue of a license. If it had been conceded on the argument that the board had ever actually determined to grant Mr. Kelly a license, and that nothing had occurred since that determination to disqualify him from receiving it, I should have felt it my duty to grant the *mandamus*. But I understand the fact to be that at no time has the board resolved that Mr. Kelly ought to have or should have a license. The board raises the objection that Mr. Kelly cannot cook a meal's victuals on his premises, and therefore has not the requisite accommodations for an inn-keeper. I am called upon to decide whether he be an inn-keeper or not. If an applicant be an inn-keeper, the board ought distinctly to pass upon the question of granting him a license. If the board resolve that he shall have a license, a *mandamus* will lie if there be undue delay in issuing it. If they determine that all the conditions exist under which the law provides that licenses may be issued, and if they decline to license, because they deem it best for the community that no licenses should be granted, the question will

then arise whether the courts of to-day will feel themselves bound by the dictum of judge COWEN in *Ex parte Persons* (1 *Hill*, 655), and by the dictum of judge WOODRUFF in *The Mayor* agt. *Mason* (4 *E. D. Smith*, 142, 147). Those judges both expressed the opinion that the granting of licenses was purely discretionary with the excise commissioners. The question which both parties have requested me to decide, is whether Mr. Kelly be an inn-keeper or not? There have been many decisions in this state, as well as in England, respecting the accommodations a house must afford, in order to be entitled to the name of inn, tavern or hotel. Those decisions are all collected in the admirable opinion of chief-justice DALY in *Cromwell* agt. *Stephens* (3 *Abb. N. S.*, *p.* 26). In addition to collating the decisions, that accomplished scholar brought together in a compendious form his researches, philological and historical, into the origin and development of the words inn, tavern, hotel. It is sufficient for me to use the learning he has brought to my hand, and to take the law as I find it laid down in the decisions he has cited, and in the decision which he made. Chief-justice DALY said: "A mere lodging-house, in which no provision is made for supplying the lodgers with their meals, wants one of the essential requisites of an inn." Again, he said: " We have in the cities houses of entertainment in which the guest pays so much per day for his room, and takes his meals or not, as he thinks proper, in the restaurant, paying separately for each meal as he takes it. Where the restaurant forms a part of the establishment, and the house is kept under one general management for the reception of all travelers that may come, it is an inn, there being no material difference between it and the Elizabethan inn, in which the traveler paid separately for his apartment, and for each meal." It seems to me a waste of time to argue that a lodging-house-keeper is an inn-keeper, because he may send out and procure cooked food for his guests. As well may it be contended that Mr. Thompson who keeps an eating-house is an inn-keeper,

because he could, if requested, send out and get the requisite bedding and bedclothing for the accommodation of guests who might wish to pass the night in his dining room. No rule can be laid down as to the extent and resources of the kitchen, but it seems to me that the board must be satisfied that the furnishing of meals is a regular part of the business of the applicant for a license. A free lunch at the bar, or the occasional bringing of victuals from a neighboring restaurant will not transform a drinking saloon into a hotel. Every man's experience teaches him that no man who expected to keep a hotel would seriously think of sending out to a neighboring dining room for every article of cooked food that a guest might order. The good faith of any person who professed to have such a business plan would be suspected at once. In short, a house which does not contain the means of preparing food for the table in the ordinary way has not, to use the language of the act, "the necessary accommodations to entertain travelers." The application for the *mandamus* must be denied.