THE KING ex rel. HENRY BRADLEY and W. R. CHILTON
vs. L. A. THURSTON, Minister of the Interior.

ON APPEAL FROM DOLE, J.

JANUARY TERM, 1889.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

The Statute of 1882, entitled "An Act to Regulate the Sale of
Spirituous Liquors," does not confer the right upon all persons to
obtain a license, upon giving an approved bond and paying the
license fee. The granting or refusing such a license is discre-
tionary with the Minister of the Interior.

The exercise of this discretion by the Minister is not subject to review
or control by the Court.

This discretion is absolute, and is not affected by the fact that licenses
have been previously granted to persons to retail spirituous
liquors on the same premises.

The proper practice to be followed, in applying for Writs of Mandamus,
explained.

OPINION OF THE COURT, BY PRESTON, J.

This was an application by Henry Bradley and William R.
Chilton for a writ of mandamus, directed to the Minister of the
Interior, to compel him to grant the said Chilton a license to
sell spirituous liquors at retail on the premises known as the
Keystone Saloon, situate at the corner of King and Fort streets,
Honolulu.

The petition alleges that the petitioners are owners, as tenants
in common, of the premises known as the Keystone Saloon.
That since the year 1876 the said premises have been owned as
aforesaid, and used for the business of selling wine and spirits
at retail under license issued by the Minister of the Interior,
first to said Bradley, and afterwards to different persons repre-
senting said owners or their lessees. That large expense, to wit:
over $3000, was incurred by petitioner in fitting up said premises
as a saloon for the purpose of said business, and that by con-

tinuing such business therein a much larger income can be obtained therefrom than from any other use thereof. That on the 7th of January, 1888, the annual license for said saloon expired, being then in the name of J. P. Bowen, the barkeeper for the then lessee thereof; but such license was provisionally renewed until the sixth day of March, and that the Minister of the Interior and the then Acting Minister of the Interior had since been requested by petitioners to renew such license for said premises by granting to said Chilton a license for selling spirituous liquors at retail at said Keystone Saloon, and that although such request had been accompanied with the tender of the sum of $1000, and of a bond with surety to be approved by said Minister in the form required by law in such cases, yet said Minister absolutely refused, and said Acting Minister still refused, such request, and they severally based such refusal solely on the ground that the Minister had decided to issue no more such licenses in Honolulu. And the petitioner submitted that thereby they were unlawfully and arbitrarily debarred from and deprived of the right of acquiring property, and that they were entitled to have a license, for the vending of spirituous liquors at retail at said Keystone Saloon, granted by said Minister to said Chilton upon his filing a bond with a surety to be approved as aforesaid, and paying the fee required by law in such cases. And the petitioners prayed that a writ of mandamus should issue directed to the Minister of the Interior, commanding him to grant such license to said Chilton upon his giving a bond and paying the fee required by law, or to show cause to the satisfaction of the Court why such license should not be granted.

This petition was heard by Mr. Justice Dole on the thirtieth day of October last, who granted an alternative writ commanding the Minister of the Interior to issue a license to the petitioner Chilton upon his filing an approved bond and paying the license fee of one thousand dollars, or to show cause to the contrary on the 5th of November. A demurrer was filed which was argued before the said Justice, when the Attorney-General, on

behalf of the Minister, urged that the petition did not allege that the license fee of $1000 had been paid and an approved bond given; and also that under the statute regulating the sale of spirituous liquors, the granting of a retail spirit license is entirely in the discretion of the Minister of the Interior.

The demurrer was overruled, the Justice being of opinion that as the ground alleged by the Minister was solely "that he had decided to issue no more such licenses in Honolulu," there was no exercise of discretion at all, and that he found "upon examination of those cases which form precedents to the question, that where a discretion is admitted in an officer authorized to grant similar licenses, it is nowhere allowed that he should exercise an arbitrary discretion or one founded on caprice." *Rex vs. Young et al.*, 1 Burr., 550; *Reg. vs. Sylvester*, 2 B. & S., 332; *Reg. vs. Walsall*, 3 C. L. R., 100; *Zanone vs. Mound City*, 103 Ill., 558; *Sharpe vs. Justices of Wakefield*, L. R. 21 Q. B. Div., 80.

The Minister thereupon filed an answer in which he admits that he refused to issue a license to the petitioner Chilton, but denied that he based such refusal solely or at all on the ground that he had decided to issue no more such licenses in Honolulu, and alleged the truth to be that he refused to issue such licenses for the reason that he deemed it undesirable, in the public interest, that a retail liquor saloon should be established or continued in the premises known as the Keystone Saloon, and set forth various reasons for arriving at such conclusion. And the Minister, by his answer, further submitted "that he is by law vested with a discretionary power as to the granting of licenses such as is sought by the petitioner Chilton, and that, in refusing to issue such license, he acted in good faith in the public interest, and within his discretionary power in the premises."

The case was heard before the same Justice on the 14th November, who held that a discretion is conferred on the Minister of the Interior by the statute in the matter of granting retail spirit licenses. And that the expenditure of money in

improving a saloon after it had been licensed as such could not bind the discretion of an official in such case if he had a discretion. And that the Minister having by law a discretion, it was not for the Court to pass upon the sufficiency of the reasons of the respondent for refusing the license in question, further than to ascertain whether he exercised a real discretion in the matter, that is, a conclusion based upon public grounds which he had a right to consider as an executive officer, sworn to execute the laws, or whether he acted arbitrarily from caprice or prejudice, but that an officer might act from lofty public motives and still be outside of his discretion—as, for instance, if he should refuse such a license because he believed all traffic in liquor to be injurious to the public.

The Justice considered that there were among the reasons assigned by the respondent for refusing the license, some which might properly appeal to his official discretion, and therefore dismissed the petition with costs.

The petitioner appealed, and the appeal was heard by consent at a special sitting of the Court held in vacation.

*Mr. Hartwell,* for petitioner, urged that the statute left nothing whatever expressly to the discretion of the Minister, and that by plainly prescribing the acts to be performed, to have implied that no discretionary power was intended to be given; and the fact that the Minister may by Section 18 prescribe (though not arbitrarily) regulations in the license, would seem to preclude a discretionary power in the granting of the license. None of the predecessors of the present Minister have claimed this power. Even under the English Statutes, which seem to confer as absolute discretion as can be expressed·in words, the Courts have held that the exercise of discretion must not be unjust as "partial, oppressive, corrupt or arbitrary." *Rex vs. Young and Pitts,* 1 Burr., 556.

Where Justices refused to grant a license to keep an inn, alehouse, etc., on the ground that they had decided to grant no more such licenses, except to persons who had during the past year taken out licenses to sell spirits, because the public revenue

would lose considerably, the Court held that this "is not a sufficient legal ground for refusing." *Reg. vs. Sylvester et al.*, 2 B. and S., 322.

This is not the same question as would be presented by a refusal to grant a license, in a locality not heretofore allowed to be used by such business. One Minister may not bind his successor by his unauthorized acts; but when, acting under his lawful authority, he has exercised his discretion of granting a license for a particular saloon, then the owner of the saloon, having expended money in fitting it up for this purpose, has a right to expect that it will continue to be so licensed, as long as he does or permits no acts whereby he forfeits all right or claim for such license.

When any Minister has once exercised his lawful discretion in granting a license, there is no room for the exercise of such discretion by the same or by any succeeding Minister, unless there is some act done by those who received or have the benefit of such license, whereby they forfeit the right.

The English Courts, in the following cases, show how under their statutes they defined a renewed license. *Marwick vs. Codlin*, L. R. 9 Q. B., 509; *Reg. vs. Justices of Lancashire*, L. R. 6 Q. B., 97; *Reg. vs. Pilgrim*, L. R. 6 Q. B., 89.

Mr. Justice Dole, in his decision overruling the demurrer, says after a review of the authorities, "These authorities are clearly opposed to the right of the Minister of the Interior, even admitting his discretion, to limit the number of retail spirit licenses in Honolulu. That is a power which belongs to the Legislature."

Even English Courts do not confine mandamus to directing that the application be heard.

"In several cases the Court appears to have considered the function of licensing Justices as ministerial only, and Mandamuses have been granted where they have not determined according to law, though they have heard and determined;" citing *Reg. vs. De Rutzen*, L. R. 1 Q. B. Div., 55; *Reg. vs. Middlesex*, L. R. 6 Q. B., 781; *Reg. vs. Justices of Lancashire*, L. R. 6 Q. B., 907.

Counsel also cited in support of the contention that no discretion was vested in the Minister, *The People vs. Perry*, 13 Barb., 206; *Zanone vs. Mound City*, 103 Ill., 552, and many others.

*The Attorney-General* (C. W. Ashford), for the respondent, submitted that the decision appealed from should be affirmed.

The Statute (Section 14, Chapter 44, Laws of 1882) confers a discretion upon the Minister; and this return shows that discretion has been fairly and judiciously exercised.

If the discretion exists, it cannot be controlled by the judiciary. High, Ex. Leg. Rem., Sections 24, 43, 44.

The claim that the grant of a former license constitutes a vested right, is unsupported by authority and untenable in principle.

### By the Court.

There are three important questions raised by these proceedings, and which have to be decided on this appeal.

First. Does the Statute of 1882, entitled " An Act to regulate the sale of spirituous liquors," confer the right upon all persons to obtain a license upon giving an approved bond and paying the license fee? or has the Minister of the Interior any discretion in the matter?

Second. If the Minister has a discretion, is the exercise of such discretion subject to review or control by this Court?

Third. Is the discretion of the Minister affected by the fact that licenses have been granted to persons to retail spirituous liquors on the premises owned by the petitioner?

Section 14 of the " Act to regulate the sale of spirituous liquors," passed in 1882, provides that " The Minister of the Interior shall have the power to grant licenses to retail spirituous liquors, upon application in writing stating the name of the vendor and where the applicant intends to establish his place of business in each district."

This section is a re-enactment of a similar one in the law of 1862, and the Court is not aware that the right of the Minister of the Interior to exercise a discretion in granting licenses under that law or under the present law has ever been disputed.

If the contention on behalf of the petitioner is correct, it must follow that any person applying would have a right to receive a license, on paying the license fee of one thousand dollars, the only discretion left in the Minister being the approval of the bond. We are of the opinion that the interpretation placed upon the statute by Mr. Justice Dole is correct and that the Minister has a discretion in granting or refusing such licenses.

It now becomes necessary to consider the question whether such discretion is absolute or is subject to be reviewed or controlled by this Court.

In the case of *Zanone vs. Mound City*, 103 Ill., 552, cited by Counsel for the petitioner, a majority of the Court held that the right, under the City Ordinance, of the applicant to have a liquor license was absolute on his complying with the requirements of the ordinance, and that the Court would compel the corporate authorities by *mandamus* to grant a license where it was refused through mere caprice.

It is unnecessary for us to say whether we concur in that decision or not, as from the construction we have placed upon our statute it is not applicable.

The case of *The People vs. Perry*, 13 Barb., 206 was also cited. This was an application for a peremptory mandamus to compel the Mayor of Albany to grant to the relator a license to carry on the business of booking emigrant passengers. The Mayor refused to grant the license for the reason that he supposed that was a matter resting in his discretion, and that in consequence of frauds practiced upon emigrants passing through Albany by persons theretofore licensed, he had concluded that the interest and safety of such emigrants would be better secured and promoted if no such licenses were given or granted, and therefore he had made up his mind not to give such license to any person.

But the Court held that upon giving a bond of the tenor and description specified in the Act, under which such licenses were authorized to be issued, any citizen was entitled to such license as a matter of legal right.

34

Under the construction given by the Court to the statute in question in that case, the decision was clearly right; but we do not give the same construction to the statute in question in the case at bar.

It is established by all the authorities which it is the practice of this Court to consider, that Courts will not interfere by mandamus with the discretion of public officers when such discretion has been exercised.

In *The Queen vs. Price*, L. R., 6 Q. B., p. 418, Mr. Justice Blackburn says : "Though this Court can compel by mandamus the exercise of that discretion, it can never require its exercise in any particular way. The Court can order a court of quarter sessions to entertain a case, and try whether or not a man is guilty ; or which is a better illustration, order a magistrate to hear all the evidence brought against a man and determine whether he will commit him for trial or not. The Court could not order a magistrate to commit because a magistrate has a discretion as to a committal for trial, and to order him to commit would be to direct him to exercise his discretion in a particular way. Therefore, whenever it is a matter of discretion, all we can do is to compel the officer to take the matter into consideration and decide upon it."

During the argument, and in the briefs filed, many English authorities were cited, referred to and commented upon ; but it appears to us that the effect of them upon the points in issue before us has been misconceived, and that instead of sustaining the contention made on behalf of the appellants, they, when properly understood, have quite the contrary effect. In all the cases where a mandamus has been asked for or granted, it has been to direct the licensing authority to hear and determine the application.

The earliest case cited, *Rex vs. Young and Pitts*, 1 Burr., 556, was strongly relied upon as an authority in support of the contention that the discretion should not be exercised arbitrarily, and was subject to the control of the Court.

This case was not an application for a mandamus, but was for leave to file a criminal information against two justices of the peace, for arbitrarily, obstinately and unreasonably refusing to grant a license to one Henry Day to keep an inn.

In discharging the rule Lord Mansfield said (pp. 561–562) : " That this Court has no power or claim to review the reasons of justices of the peace, upon which they form their judgments in granting licenses, by way of appeal from their judgments or overruling the discretion entrusted to them."

" But if it clearly appears that the justices have been partially, maliciously or corruptly influenced in the exercise of this discretion, and have (consequently) abused the trust reposed in them, they are liable to prosecution by indictment or information, or even possibly by action if the malice be very gross and injurious."

Mr. Justice Denison concurred and expressly allowed the " discretionary power of the justices in granting licenses, without appeal from their judgments, or having their just and honest reasons reviewed by anybody. But yet an improper and unjust exercise of the discretion ought to be under control. But it must be a clear and apparent partiality or wilful misbehavior, to induce the Court to grant an information, not a mere error in judgment."

Mr. Justice Foster concurred in the general principles laid down. " He declared against increasing the number of public-houses, and therefore thought the justices far from being to blame in having come to a resolution not to increase them."

This case was decided in the year 1758, and the principle then laid down has been followed down to the present time.

The case of The Queen vs. The Justices of Walsall, 3 C. L. R., 100, was also cited. The report is not accessible to us; but it appears, from the citation of the case in The Queen vs. Sylvester, 2 B. and S., p. 325, that the Justices of the Borough had refused to hear an application for a license on the ground that they had come to a resolution not to hear any applications for new licenses, and a mandamus was issued to them to hear the application.

In *The Queen vs. Sylvester*, an application had been made to licensing justices for a renewal of licenses to keep an Inn alehouse and victualling house, but the justices refused the licenses unless the applicants also took out licenses for the sale of spirits, and on appeal the Court of Quarter Sessions affirmed the decision, but reserved the question for the Court of Queen's Bench, "whether the licensing justices acted illegally in refusing to renew the appellants' licenses on the sole ground that they declined to take out a license for the sale of spirits in addition to the sale of beer?"

The Court said "We do not interfere with the discretion of the justices in this matter. But if we are asked by them as to the exercise of their discretion, we think they were wrong."

The Justices did not, as stated by counsel for the appellants, give as a reason for requiring the applicant to take out a spirit license, that the public revenue would suffer; that was urged only by counsel on the argument.

The cases cited in the quotation from Shortt on Mandamus, do not appear to us to support the appellants' contention. They are all cases in which the Court directed the Magistrates to hear the applications.

Having decided that the Minister has a discretion, we are also of opinion, upon the construction of the statute, and adopting the authorities cited and referred to, that such discretion is absolute, and is not subject to be reviewed or controlled by this Court.

We are also of opinion that the discretion of the Minister is the same in respect to granting what are called by counsel for the petitioners, renewals of licenses, as in granting licenses in the first instance; we fail to see anything in the statute placing such licenses on different footings. No part of the statute can be construed as giving to any holder of a license, or the owner of the premises upon which spirituous liquor is licensed to be sold, any vested interest in or legal claim to have such license continued.

It may be said that the construction which we have placed upon the statute gives to the Minister the right to refuse the

granting of any licenses, and that the discretion may be arbitrarily exercised, and that it is unwise and improper to place such a wide discretion in one individual, but that argument we cannot consider. The legislature having given such discretion, it belongs to that authority and not to this Court to limit it. Should the discretion be abused, the legislature may by a vote of censure upon the Minister, or by amending the law, control such discretion, or provide other means for regulating the issuance of licenses.

In the case of *Sharpe vs. Wakefield*, L. R., 21 Q. B. Div., 66, the Justices had refused to renew a license on the grounds of "the remoteness of the inn from police supervison and the character and necessities of the neighborhood," and the Court held that the discretion of the Justices was the same in granting or refusing renewals of licenses as in granting original licenses. Wills, J., page 80, says: " As by the Act there was absolutely no distinction between applications for licenses made at the annual general licensing sessions by a person who did not, and those made by a person who did already hold a license, it followed that there was no limit to the discretion of the Justices in the case of renewal any more than in the case of a grant for the first time."

As it appears to us that there has been some irregularity in the proceedings, we think it is proper to state what in our view the practice in applications for writs of mandamus should be, although no question has been raised in this case, and although the petition in this case was entitled and drawn according to the practice which has heretofore prevailed here, and which appears to prevail in some of the States of the United States.

The petition itself should not be entitled as a personal action. It may be entitled " In the matter of an application of ———— for a writ of mandamus," etc. It should present to the Court a *prima facie* case of duty on the part of the respondent to perform the act demanded and an obligation to perform it, and should also anticipate and answer every possible objection or argument in fact, which it may be expected will be argued against the claim.

The truth of the facts set forth in the petition should be shown by the oath of the petitioner, and where necessary by the affidavits of others, so that the whole of the petitioner's case may be apparent to the Court when the application is made.

The alternative writ must be sufficient in itself to show precisely what is claimed, and the facts upon which the claim is made. The petition is no part of the pleadings. The alternative writ takes the place of a declaration, and the return, motion to quash, or demurrer should be to it and not to the petition.

If the respondent shows cause, the affidavits should set forth all the facts upon which the respondent relies, so that the Court may judge whether the cause shown is sufficient without taking oral testimony. Affidavits may be made by other parties than the respondent. If new matter is set up, the Court may, if it sees fit, allow affidavits in reply. See Moses on Mandamus, Tapping on Mandamus, High on Ex. Rem.

Looking at the petition in view of the opinions hereinbefore expressed, we think that the alternative writ might well have been denied, except that the Justice issuing it might have thought the question was of sufficient importance to require an authoritative decision by this Court.

The appeal must be dismissed, with costs.

*A. S. Hartwell*, for plaintiffs.

*Attorney-General*, for respondent.

----

While I agree with the conclusion arrived at in this case, I still hold to the reasoning of the decision appealed from, in relation to the right of the Court to inquire whether the officer has exercised a legal discretion.

S. B. DOLE.

----

DECISION OF DOLE, J., APPEALED FROM.

The plaintiffs alleged in their petition, substantially, that they are owners as tenants in common of the premises known as the Keystone Saloon, situate on the westerly corner of King and

Fort streets in Honolulu; that from August 22, 1878, to March 12, 1888, the said premises were continuously used for retail liquor selling under licenses from the Minister of Interior, during the whole of which time the premises were owned by one or both of the plaintiffs; that over three thousand dollars have been spent by the plaintiffs in fitting up the said premises for the said business, and that by continuing such business therein a much larger income can be obtained from the said premises than by any other use thereof; that the said plaintiff, Henry Bradley, held the license for retailing liquor on the premises from August 22, 1878, until March 12, 1883, since which time the premises have been leased to and the business carried on by others; that since March 6, 1888, the lease having expired, the plaintiffs have applied for a license to be issued to the plaintiff, William R. Chilton, for selling liquors at retail at the same premises, and have tendered the statutory license fee and a bond with surety to be approved by the Minister of Interior, but that such application has been refused, solely on the ground that the respondent had decided to issue no more such licenses in said Honolulu.

By reason whereof the plaintiffs claim " that they are unlawfully and arbitrarily debarred from and deprived of the right of acquiring property, and that they are entitled to have a license for the vending of spirituous liquours at retail at said Keystone Saloon granted by the defendant to said William R. Chilton upon his filing a bond with a surety to be approved as aforesaid, and paying the fee required by law in such cases," and pray for a writ of mandamus to be addressed to the respondent directing him to grant such license upon the performance of the statutory conditions.

An alternative order was issued and the respondent demurred and his demurrer being overruled, he filed his answer admitting that he refused and still refuses to issue such license to the said William R. Chilton, but denying that he had based such refusal solely, or at all, on the ground that he "had decided to issue no more such licenses in said Honolulu." The respondent

further alleges that he refused to issue the said license for the reasons : that the premises are on the corner of two of the most important and frequented streets in Honolulu, which streets are largely occupied by the principal retail dry goods and other retail stores of the city, such as are frequented by ladies; that the said building projects a considerable distance beyond the general line of Fort street and that the sidewalk and street in front of the same is narrower than elsewhere on said streets; that the doors to the premises open directly from the sidewalks of the said streets substantially on a level therewith, and that the interests, comfort and safety of those using said streets, and especially of ladies and children frequenting that portion of the city, demand their exemption in that locality from the various natural and inseparable accompaniments of a retail liquor saloon, to-wit, the presence, profanity and general indecency of intoxicated persons and the danger and terror of personal contact with such persons in the said locality ; that the premises, while such trade has been carried on therein in the past, have continuously sustained a reputation for carousal and drunkenness to an extent detrimental to the good order, peace, quiet and comfort of the neighborhood ; that the carrying on of such business in the said premises has proved in the past and would continue to prove inimical to the business interests of the neighborhood and of owners of property therein, and prejudicial to the peace, quiet and comfort of the locality ; that in the same block in which the said Keystone Saloon is situated, and within 250 feet thereof, there is another retail liquor saloon, and that within a radius of 700 feet there are two others, and two more a short distance beyond, so that in the interests of those who avail themselves of the privileges afforded by a saloon there is no necessity for the issuance of any further license in that neighborhood, and in the interests of sobriety and temperance an increase in the number should not be made ; that prior to the said application for a license the defendant received petitions· numerously signed by those conducting business in the neighborhood of the said Keystone Saloon, and other residents of

Honolulu, praying defendant not to grant any further license for the sale of liquors in the said premises, and that for these considerations the defendant deemed it undesirable in the public interest that a retail liquor saloon should be established or continued in the sa  emises. The answer also alleges that in refusing such license the respondent acted in good faith in the public interest and within his discretionary power vested in him by law, and that for the same reasons he has refused similar applications from other parties for a license to retail liquors in the said premises.

It was shown by the testimony introduced by the respondent that besides the petitions against the granting of a new license for the said premises referred to in his answer, he had received numerous complaints against the Keystone Saloon and none against any other saloon in the city, these complaints being mainly on the ground of the locality; that the various proprietors of the Keystone Saloon had never been convicted of any breach of the statutes regulating the sale of spirituous liquors or of the conditions of. their licenses; that ladies passing on Fort street would often cross over to the other side of the street in order to avoid the saloon; that the place is a good deal frequented by intoxicated persons and is noisy at times, particularly so when men-of-war are in port. The testimony as to the injury to business caused by the sale of liquors on the premises was not very precise, but I think it was sufficiently shown that the adjoining store on Fort street has suffered to some extent on this account, and is likely to suffer in the future if the license should be renewed.

It is necessary to the settlement of this case that the question of the discretion on the p ·t of the Minister of Inte  r in the matter of issuing retail liquor licenses, should be first disposed of. The 14th section of the Act to regulate the sale of spirituous liquors, of the Laws of 1882, defines his authority in the following words:  "The Minister of the Interior shall have the power to grant licenses to retail spirituous liquors, upon application in writing, stating the name of the vendor and

where the applicant intends to establish his place of business in each district." Our laws in giving powers to officials use a variety of words which *prima facie* denote a discretion; besides the words, "shall have the power," above quoted, we find the expressions, "may," "authorized," and "it shall be lawful." In addition to these are words expressly conferring a discretion, such as, "shall have power to prescribe such rules and regulations for the keeping of billiard tables and bowling alleys as he may deem necessary and proper for the public good." (Civil Code, Section 79.) "The Minister of Interior may, in his discretion, grant to any suitable person or persons applying therefor in writing a license for one year to establish a shipping office," etc. (Civil Code, Section 130; see also Laws of 1882, Chapter XIII., and Laws of 1886, Chapter 3, Section 1.) But the words "shall have the power" belong to the class of expressions primarily denoting a discretion but which sometimes are mandatory on the officer to whom they apply. The circumstances in which these expressions are peremptory are, when public interest or the rights of third persons require them to be so construed, and when there are other words in the statute which show that they are meant to be imperative. (*Fowler vs. Perkins*, 77 Ill., 273 and *People vs. Supervisors*, 68 N. Y.. 119.) In the case at bar, it can hardly be argued that the public interests require that a license should be granted for the sale of liquors at retail at the Keystone Saloon, even if it should be conceded that they require that such traffic be carried on in the city. The plaintiffs, however, make the point that relying upon the approval by the official predecessors of the respondent, of the premises in question as a suitable place for the sale of liquors. they have expended money in improving the same whereby they have enhanced the value of the property as a saloon, and that the respondent has no right to deprive them of this enhanced value by refusing the license applied for. It does not appear from the evidence in the case how much money was expended in improving the premises after the first liquor license. was granted for them in

the year 1878. The petition for the writ of mandamus alleges "that large expense, to-wit, over three thousand dollars was incurred by your petitioners in fitting up said premises as a saloon for the purpose of said business." No further evidence was introduced upon this point; it may have been that the whole or the greater part of the said three thousand dollars were expended in fitting up the saloon upon the occasion of the institution of the liquor business there in 1878, in which case such expenditure could not be said in any sense whatever to have created a right on the part of the plaintiffs or either of them to a license. Nor do I think that the expenditure of money in improving a saloon after it had been licensed as such could bind the discretion of an official in such case, if he had a discretion. I find no authority for such a conclusion of law. Does the statute elsewhere show that the legislature meant that the words "shall have the power," should be mandatory on the Minister of Interior? I can find no evidence of such intention ; on the contrary there is intrinsic evidence that the legislature at the time of passing the act considered that these words conferred a discretion, inasmuch as in the 17th section of the act they have used the same words and followed them with other words making them mandatory, as follows: The Minister of the Interior * * * shall have the power and it shall be his duty to fix the limits or boundaries within which those obtaining a license contemplated by this act shall carry on and transact such business," etc. There being no such explanatory words denoting that the words, "shall have the power," as used in the 14th section of the act authorizing the Minister to grant licenses, are meant to be peremptory, they must be taken in their ordinary meaning, which is that they confer a discretionary power. "*Prima facie* those words (it shall be lawful) import a discretion, and they must be construed as discretionary unless there be anything in the subject matter to which they are applied, or in any other part of the statute, to show that they are meant to be imperative." *In Re Newport Bridge*, 2 E. & E., 377. This authority is quoted with

approval in *Queen vs. Bishop of Oxford*, 4 Q. B. Div. I . R., 257-8 and in the same case on appeal, *id*, 553. In the latter it was laid down that the burden is upon those who assert that such words are imperative, to prove it. It therefore seems clear to me that a discretion is conferred on the Minister of Inte ior by the statute in the matter of granting retail liquor licenses.

This view is consistent with the opinion of the Justices of the Supreme Court furnished to the Legislature of 1888 upon certain questions submitted to them by that body in regard to the discretion of the state in issuing licenses, and with Chapter 19 of Cooley on Taxation, in which the principle is recognized that when there is an imposition of license fees upon any business or occupation for the sake of regulation rather than of revenue, there is a discretionary power in the state as to the granting of such licenses. The cases referred to in the brief of plaintiff's counsel, with one exception, do not go further than the principle laid down in two of them, *i.e.* in *Supervisors vs. U. S. ex Rel.*, 4 Wall., 435, (syllabus) that "where power is given by statute to public officers in permissive language as that they 'may if deemed advisable' do a certain thing, the language used will be regarded as peremptory where the public interest or individual rights require that it should be done," and in *Newburg Turnpike Co. vs. Miller*, 5 Johns. Ch., 113, "that the word *may* means *must* or *shall* only in cases where the public interest or third persons have a claim *de jure* that the power should be exercised." In the case, however, of the *People vs. Perry*, 13 Barb., 206, referred to by the plaintiff, a peremptory mandamus was granted to compel the Mayor of Albany to issue a license for the booking of emigrant passengers, and the Court say "this license could only be obtained by first giving a bond of the description and tenor specified. Upon complying with all these prerequisites, as I understand the law, any citizen has a legal right to exercise this vocation." Although this case appears at first sight to be hostile to the view adopted above, I find upon examination that it is not necessarily so, for the respondent stated by way of defense

"that he refused to grant the license for the reason that he supposed that it was a matter resting in his discretion, and that in consequence of the frauds practiced upon emigrants passing throngh Albany, by persons heretofore licensed, he had concluded that the interest and safety of such emigrants would be better secured and promoted if no such license were given or granted." In other words, he attempted to carry his discretion so far as in effect to repeal the law, which would be contrary to all the authorities on the subject of official discretion. Therefore, although the case was correctly decided, the conclusion of the presiding judge above quoted was not necessary to the decision of the case, and cannot be considered as having weight as a judicial precedent.

The respondent has shown, as appears by his allegations and the evidence, that there were public reasons against the granting of the license in question, and that he was actuated by these reasons in refusing to grant it, and he denies positively that he based such refusal solely or at all on the ground that he "had decided to issue no more such licenses in said Honolulu." Having decided that the law gives the Minister of Interior a discretion in the matter, it is not for the Court to pass upon the sufficiency of the reasons of the respondent for refusing the license in question, further than to ascertain whether he exercised a real discretion in the matter, that is, a conclusion based upon public grounds which he had a right to consider as an executive officer sworn to execute the laws, or whether he acted arbitrarily, from caprice or prejudice; and I consider an officer under the circumstances may act from lofty public motives, and still be outside of his discretion, as, for instance, if he should refuse such a license because he believed all traffic in liquor to be injurious to the public. The grounds upon which the respondent claims to have acted have been stated above, and I consider that there are among them reasons which may properly appeal to the official discretion of the respondent.

The complaint is therefore dismissed, with costs.