# THE PEOPLE OF THE STATE OF NEW YORK ex rel. EDWIN· M. WORTH, Appellant, v. HUGH J. GRANT, Mayor of the City of New York, Respondent.

*The granting of a license to have an exhibition in the city of New York is discretionary with the mayor.*

Under section 1998 of chapter 410 of the Laws of 1882, providing that an exhibition shall not take place in the city of New York until "a license for the place of such exhibition, for such purpose, shall have been first had and obtained," and section 1999 providing that "the mayor of the city of New York is hereby authorized and empowered to grant such license, to continue in force until the first day of May next ensuing the grant thereof, on receiving for each license so granted, and before the issuing thereof, the sum of five hundred dollars," it is discretionary with the mayor whether he will grant a license or not.

The court cannot be called upon to substitute its judgment for that of the mayor on an application for a *mandamus* to compel the latter to grant the license.

Appeal by the relator, Edwin M. Worth, from an order made at Special Term, under date of November 5, 1890, and entered in the office of the clerk of the county of New York on November 7, 1890, which denied a motion that a peremptory writ of *mandamus* issue to be directed to the respondent Hon. Hugh J. Grant, mayor of the city of New York, requiring him to act, upon the application for a license filed with him, by the relator, Edwin M. Worth, and directing him to grant to the said relator, on receiving the sum of $500, a license to give vocal and instrumental concerts, and to give museum exhibitions, without stage scenery or apparatus, on premises located and known as Worth's Museum, 492 Sixth avenue, in the city of New York.

*A. J. Dittenhoefer* and *David Gerber*, for the appellant.

*Charles Blandy* and *William H. Clark*, for the respondent.

Barrett, J. :

The above statement sufficiently indicates the character of this appeal. The relator contends that the mayor is not vested with discretionary power in the premises, and that upon tender of the fee specified in the statute (Consolidation act, § 1999) he is absolutely entitled to the license asked. The respondent, on the other hand, contends that the question whether the license shall issue rests in his sound discretion. Whether a duty imposed upon a public

officer is imperative or discretionary is always a question of legislative intention. "Each case," as Judge Dillon observes in his work on Municipal Corporations (§ 98), "must be largely decided on its own circumstances and the legislative intent gathered from the whole act. No positive or stereotyped rule can be laid down." Keeping this doctrine in mind, cases which might otherwise seem to conflict are easily reconcilable. To illustrate: In *Perry* v. *The Mayor* (7 How. Pr., 81), Judge Mitchell held that the mayor's discretion to license a stage-driver was absolute, that he was not bound to assign any reason for his decision, and that impeachment was the only remedy for an abuse of power. In the *People ex rel. Osterhout* v. *Perry* (13 Barb., 206), Judge Harris held that the mayor of Albany was absolutely bound to grant a license (to carry on the business of booking emigrant passengers) to any person who brought himself within the terms of the act. The conflict here is but seeming. The ordinance under consideration in *Perry* v. *The Mayor* authorized and required the mayor to issue licenses to as many persons as he might think proper, and to revoke the same at his pleasure (p. 84), while the act of 1848 (chap. 219, § 7), which was construed in the *People* v. *Perry*, conferred no such broad authority, but simply provided that no person should exercise the vocation of booking emigrant passengers without keeping a public office for the transaction of that business, "*nor without the license of the mayor,* * * * *for which shall be paid the sum of* $25 *per annum*," and giving a satisfactory bond to the mayor as security for the proper manner in which the business should be conducted. The italicized phrase was the only expression of authority contained in that act, and Judge Harris, while intimating that it would have been better if the legislature had authorized the mayor to grant or withhold licenses in his discretion, held that such discretion could not be inferred from the language quoted; that the only discretion vested in the mayor was that of determining whether or not the bond offered by the applicant was satisfactory, and that if any further discretion had been contemplated, "the rules of interpretation require us to suppose such intention would have been distinctly expressed."

The language employed in the consolidation act is not as broad as that used in the ordinance under review in *Perry* v. *The Mayor*,

nor as narrow as the expression contained in the act construed in *The People* v. *Perry.*  Section 1998 provides that the exhibition shall not take place until " a license for the place of such exhibition *for such purpose* shall have been first had and obtained."  Then follows section 1999, the material part of which reads as follows :

" The mayor of the city of New York is hereby authorized and empowered to grant such license, to continue in force until the first day of May next ensuing the grant thereof, on receiving for each license so granted, and before the issuing thereof, the sum of five hundred dollars."

The relator's contention is, that these words, " authorized and empowered," should be construed as imperative, and he cites authorities for the proposition that permissive words may sometimes be treated as mandatory.  This proposition will not be denied, but the question is, whether the circumstances here call for such a construction.  The rule undoubtedly is, that where public bodies or officers are empowered to do that which the public interests require to be done, and adequate means are placed at their disposal, the proper execution of the power may be insisted upon though the statute conferring it be only permissive in its terms.  (*Mayor* v. *Furze,* 3 Hill, 612.)  The word " may " is thus construed at times to mean " must."  But why, it may be asked, should this construction be given to the act under consideration ?  What public interest demands that the mayor should be required under all circumstances to accept the fee and grant the license ?  It seems to me that it is quite the other way.  The public good clearly requires that the permissive words in question should be read in their natural and ordinary sense.  The title which heads these sections is "Amusements," and a system follows, regulating places of public entertainment in important particulars.  Exhibitions upon Sunday are forbidden (§ 2007); so are public masquerades (§ 2008); so is the sale of wine, beer or strong or spirituous liquors (§ 2010); so is the presence of minors under the age of fourteen unaccompanied by an adult person.  The whole act is plainly within the police power, and the payment of license fees to the Society for the Reformation of Juvenile Delinquents is a mere incident.

In *Wallack* v. *The Mayor* (3 Hun, 84), the same view was taken

of the act of 1872, from which the sections of the consolidation act already referred to were drawn. That act was entitled "An act to regulate places of amusement in the city of New York." (Laws of 1872, chap. 836.) It was of this enactment that Davis, P. J., in the case cited, observed:

"The chief object of this act is to provide for the regulation of places of amusement in the city of New York, by placing them under the control of the public authorities through a system of licenses to be granted by the mayor on the payment of a fixed fee."

The learned judge further observed that: "It might be no difficult task to show that the system of licenses, and its consequent preclusion of unworthy exhibitions, from which license is or ought to be withheld, is greatly advantageous to such establishments as the plaintiff's by preventing the degradation of all such performances in the public estimation, which would be quite certain to grow out of the promiscuous and unrestrained exhibitions which would spring up in the absence of legal restrictions."

The relator lays great stress upon the fact that the license is not for the entertainment itself, but for the place where it is to be given. But the language is, "for the place of such exhibition *for such purpose;*" that is, for the purpose of the proposed entertainments. The applicant must, therefore, specify the purpose as well as the place, and the inquiry which the mayor may then properly institute is not limited to the applicant's characterization of his intended performances. If the applicant openly avows an immoral purpose, surely the mayor is not bound to facilitate the execution of such purpose. If, however, the purpose is apparently proper, the mayor may look beneath the surface and ascertain the real purpose; and if, upon investigation, that purpose, in his judgment, is inimical to good order and public decency, he may properly withhold the license. It would, indeed, be a remarkable construction, subversive of the entire object sought to be attained by the act, which would compel the mayor to license an avowedly indecent exhibition or a disorderly place of entertainment. The relator insists that even under such circumstances the license must be granted, and that the only remedy is to treat the exhibition as a nuisance, and check it by the operation of the criminal law. This, however, would be entirely inadequate. The purpose disclosed

or ascertained might be grossly immoral and yet outside the Penal Code. It is no answer to say that after the license is obtained the manager may change his plans and foist an improper exhibition upon the public, or that he may lease to another who will do likewise. That may be, and yet it furnishes no good reason for depriving the mayor of the exercise of original judgment. On the contrary, it is an argument in favor of careful discrimination in the first instance. But even if the mayor's authority were limited to *the place*, without regard to the purpose, his discretion remains. The locality of play-houses, circus pavilions, concert halls and the like is clearly a matter of public concern. It may well be, for example, as Mayor Grant has decided in the present instance, that a building for the exhibition of curiosities with the enlivenment of music and song, erected upon the site of " The Argyle and the Haymarket," formerly notorious resorts, would be likely to attract the evil characters who are said to abound in the neighborhood, and who were formerly patrons of the resorts named. The question of the neighborhood was thus highly important, and it was clearly a question upon which the mayor might exercise his judgment.

The view which we have taken of the act under consideration is fully supported by the authorities. In *Morse* v. *Edson* (Supr. Ct., MS. opinion) Mr. Justice INGRAHAM carefully examined the subject, and, in an able opinion reviewing the cases, arrived at the conclusion that the power to license was discretionary. Since that case was decided the same conclusion was arrived at with regard to a similiar act in *The People ex rel. Dorr* v. *Thacher* (42 Hun, 349). In the latter case the language used was also permissive. It was held that it would be contrary to the policy of the law to treat it as mandatory, and that it was intended to be permissive " in view of the object and end to be answered by an observance of the right conferred." *The Commonwealth ex rel. Miller* v. *Stokley* (12 Phil., 316), is cited by the relator as an authority against the claim of discretion. An examination of the case, however, will show that the language of the act was mandatory, " which license *shall* be granted upon the payment," etc., and that the decision was regretfully placed upon that express ground.

Other questions are discussed upon the appellant's brief, but they are not entitled to serious consideration upon this appeal. For

instance, the argument against the constitutionality of the act. That argument certainly does not advance the relator in the direction of a *mandamus*. It is only by ignoring the law, and proceeding without a license, that he can raise that question.

It is not necessary to consider the question whether the discretion is, under any circumstances, reviewable. The relator contends that, if it exists at all, the discretion is qualified by the requirement of good faith. He insists, in other words, that it is not an arbitrary discretion, but one which must be reasonably exercised. There are cases where an abuse of discretion may be controlled by *mandamus*. (Topping on Mandamus [Am. ed.], 66; *Village of Glencoe* v. *The People*, 78 Ill., 382.) But the difficulty here is, that the court cannot substitute its judgment for that of the officer. To do so would be, in effect, to usurp the power to grant the license. (*People ex rel. Wilson* v. *Supervisors of Albany*, 12 Johns., 414.) But this subject need not be pursued, for the reason that the relator has not made out a case of this extreme description. Many of his statements, it is true, are expressly admitted or not denied, but his averments of good moral character, and his intention to give proper and moral performances, are explicitly denied. The mayor expressly puts his refusal to license the relator upon two grounds: First, that he is not, in the mayor's judgment, a man of such character as to render him a proper person to be entrusted with the license; and, second, that it would be dangerous to the good morals and welfare of the community to license the premises in question. Several facts are stated, somewhat generally, it is true, in support of these positions, and it is, therefore, impossible, to treat the mayor's decision in the matter as an abuse of discretion. Certainly, the relator has made out no case for a peremptory *mandamus*, for the facts upon which he claims that the mayor's conduct was arbitrary and oppressive are sufficiently in dispute to raise an issue upon that head; and an alternative *mandamus* was not asked.

It follows that the order denying the application for a peremptory *mandamus* should be affirmed, with ten dollars costs and the usual disbursements.

VAN BRUNT, P. J., and BARTLETT, J., concurred.

Order affirmed, with ten dollars costs and disbursements.