# IN THE MATTER OF THE APPLICATION OF YIP CHONG for a Writ of *Habeas Corpus* for CHOP TIN.

## July 29, 1904.

*Immigration Act.—Habeas Corpus:* An alien immigrant prevented from landing in the United States by an immigration officer, is entitled to a writ of habeas corpus.

*Id.—Jurisdiction:* The federal courts are without jurisdiction to review on their merits the decisions of immigration officers under the stat-

utes affecting the right of aliens to enter the country. They may, however, examine such proceedings as to their conformity to law, and interfere upon a proper showing.

*Id.—Construction of Rules:* Rule 7 of the Rules and Regulations for carrying out the provisions of such statute, requiring the examination of such alien to be "in the presence of government officials and such witness or witnesses only as the examining officer shall designate," confers no authority on such officer to exclude such two non-Chinese witnesses as the alien may desire to produce, and as required by the statute, or to deprive him of a reasonable opportunity of procuring them.

*Id.—Rules.—Abuse of Discretion:* It is an abuse of discretion given in Rule 10 to the examining officer to allow "additional time for the preparation of cases" where in his judgment it is necessary to prevent injustice, if a reasonable extension of time sufficient to enable the alien to produce the evidence made essential by the statute is refused.

*Id.—Evidence.—Proof of Claim by Alien that He Is a Merchant:* A merchant in the meaning of the Immigration Act is one whose interest in a mercantile business carried on in a fixed place, is real and appears in the business or the partnership articles in his own name.

*Habeas Corpus:* Demurrer to Petition.

C. W. Ashford, Attorney for Petitioner.

J. J. Dunne, Ass't. U. S. District Attorney, for Respondent.

Dole, J.    The petition in this case is by Yip Chong who alleges that he is a cousin of Chop Tin in whose behalf the writ is prayed for. The petition complains that Chop Tin, a person of Chinese birth, is restrained of his liberty by the respondents, F. M. Bechtel or J. K. Brown or both of them; the respondents being officers of the Department of Commerce and Labor or Inspectors of Immigration. That on or about June 1st, 1904, he arrived at Honolulu on his return from China and was thereupon detained by the respondents and has since then been held in imprisonment on the ground that he is a Chinaman and not included in any of the exceptions of the Exclusion Laws of the United States, and therefore not entitled to land in Hawaii. When the case came on to be tried, the District Attorney demurred to the petition, the first two allegations of his demurrer being as follows:

"'1. Said court has no jurisdiction herein over either the "subject-matter or the person.

"2. Said court has no jurisdiction herein either to receive, "entertain or adjudicate said petition or to make any order, "judgment or decree thereon."

The question of jurisdiction in this case depends on the facts.

"An alien immigrant, prevented from landing by any such officer (Collector of Customs and inspectors acting under their authority) claiming authority to do so under an Act of Congress, and thereby restrained of his liberty, is doubtless entitled to a writ of *habeas corpus* to ascertain whether the restraint is lawful." *Nishimura Ekiu v. United States,* 142 U. S. 651, 660; *Lem Moon Sing v. United States,* 158 U. S. 538, 543.

Under Section 2 of the Chinese Exclusion Act of April 29th, 1902 (32 Stat. L. 1st part, 176), the Secretary of the Treasury was empowered to make rules and regulations "not inconsistent with the laws of the land" for carrying out the provisions of such Act and other Chinese Exclusion Acts and the Chinese Treaty, and, with the approval of the President, to appoint such agents as he might deem necessary for the execution thereof. This authority was transferred to the Secretary of Commerce and Labor and to such officers under the control of the Commissioner-General of Immigration as the Secretary might designate, by Section 7 of the Act to establish the Department of Commerce and Labor of February 14th, 1903 (32 Stat. L. 1st part, 828-9). Under the Appropriation Act of August 18th, 1894 (28 Stat. L., 390), every decision of the appropriate immigration or customs officer excluding any alien from admission to the United States is final unless reversed on appeal to the Secretary of the Treasury.

It is not disputed that the courts have no authority to review the decisions of immigration officers made under the authority of the statute affecting the right of aliens to enter the country. If, however, the facts should show in a case like the one before the court, where a Chinaman applies for admission on the

ground that he formerly did business as a merchant in this country, that he was not allowed a reasonable opportunity of producing the two non-Chinese witnesses required by the statute in proof of such fact, the courts would have jurisdiction to interfere upon a proper showing. *Rex v. Young and Pitts,* 1 Burr., 556, 561-2; *Bradley v. Thurston,* 7 Haw., 530.

Rule 7 which provides that the examination of the applicant for admission "shall be separate and apart from the public, in "the presence of government officials and such witness or wit- "nesses only as the examining officer shall designate," confers no authority upon such officer to exclude such two non-Chinese witnesses as the applicant for admission may desire to produce, or either of them, or to deprive him of a reasonable opportunity of procuring them. A contrary construction of the rule would be inconsistent with the statute referred to, requiring the applicant to establish by such witnesses the fact that he conducted the business of a merchant for one year before his departure from this country and that during such time he did no manual labor except what was necessary to the said business (28 Stat. L., Chap. 14, Sec. 2); but if such latter construction is required by the words of the rule, then it would follow that the rule is invalid, as being inconsistent with the "laws of the land."

The rules and regulations provide in the sixth, seventh, ninth and tenth rules, among other things, that upon the arrival of Chinese persons, it shall be the duty of the proper officer to segregate them from other persons than officials, and to have them promptly examined "as by law provided" touching their right to admission; that such examination shall be in the presence of officials only and such witnesses as the examining officer shall designate, and, presumably, counsel for the applicants if they have any, and if the decision shall be unfavorable, the applicants shall be advised of their right of appeal, and their counsel permitted after filing notice of appeal, to examine but not copy the evidence upon which the decision is based. The notice of appeal acts as a stay of the deportation of the appellant

until a final decision is made. Within three days after such notice, the record of the case, with such briefs, affidavits and statements as are to be considered in connection therewith, are to be forwarded to the Commissioner-General of Immigration, with the written views of the officer in charge, unless further delay shall "be allowed only in those instances" in which the above limit of three days "would occasion injustice to the appel- "lant or the risk of defeat of the purposes of the Act."

In this case, so far as the allegations of the petition go, the prompt examination of the said Chop Tin took place upon his arrival on the 1st day of June, without opportunity on his part to procure or produce witnesses or to make any showing other than his statement through an interpreter, and apparently without counsel. Upon this examination a decision was rendered refusing Chop Tin the right to land. Notice of appeal was given and perfected on the 3rd of June. At this stage, through the efforts of petitioner, counsel was obtained on the 4th of June, and the inspector in charge thereupon extended the time in which the said Chop Tin might make a further showing of his mercantile character and of his right to land, until June 7th. It would appear from the rules above referred to that so much time, at least, was allowed by them for further prepara- tion. Such extension of time allowed no possible opportunity for Chop Tin to produce the evidence required, without charter- ing a steam-vessel. The necessary evidence was on the Island of Kauai, 100 miles away, that being his former residence. The 4th of June came on Saturday. I think the court may take judicial notice of the fact that there are no regular departures of vessels for Kauai from the Port of Honolulu on either Satur- day or Sunday and that there are no regular departures for Honolulu from the Island of Kauai on either Sunday or Mon- day. Under these circumstances it was impracticable for Chop Tin's counsel to produce the evidence in question within the three days ending June 7th. It might and should have been produced June 11th, although the explanation of the failure

to do so is some excuse, it was not produced until June 15th and then, according to the allegations of the petition, was not considered or received by the immigration officer, Mr. Brown or any other person authorized to act in the premises.

The rules referred to above, however reasonable they may be in regard to other classes of applicants for admission, are singularly inappropriate for the investigation of applications for admission on the ground that the applicant was formerly engaged in this country as a merchant, in which class of cases, as stated above, the statute requires the applicant to establish the necessary facts by two non-Chinese witnesses, which implies, in all fairness, that the applicant shall have a reasonable opportunity to produce such witnesses. The failure of the immigration officer in this case to allow sufficient time for the applicant for admission to produce the proof required by the statute would have "occasioned injustice" to him if his evidence had been sufficient. The provision of Rule 10 for an allowance of further time, does not make it a matter of discretion with the inspection officer, whether such further time shall or shall not be allowed. In a negative way it requires such delay if in the judgment of the officer a refusal would result in injustice to the applicant. The statute, by implication, requires an opportunity to be given the applicant to produce the proofs which it makes necessary to his admission. That injustice must result to a bona fide applicant for admission on the ground of former occupation as a merchant in this country, who has made a long voyage with such an object in view, and who is ready to offer sufficient statutory proofs, and is arbitrarily refused an opportunity to do so, cannot admit of a doubt, and such must be the judgment of any intelligent and unbiased person.

The other grounds of the demurrer are upon the insufficiency of the facts alleged.

Copies of affidavits of two non-Chinese witnesses are made a part of the petition. These affidavits make the case as prepared for the consideration of the immigration officer, and which it is·

alleged he refused to receive and consider.   The allegations of these affidavits are insufficient in the judgment of this court, to prove that the said Chop Tin was a merchant within the meaning of the said Act of November 3rd, 1893, in that it is not shown that the business of the firm of Lung Tai Jan of which he claims to be a partner, was "conducted in his name," which words under the leading authorities, require "that the "interest of the merchant must be real and appear in the busi- "ness and partnership articles in his own name."   *Lee Kan v. United States,* 62 Fed. Rep., 914, 918.   The law requires this fact, among others, to be established by two non-Chinese wit- nesses and that "in default of such proof (the applicant) shall "be refused landing."   *Act of November 3rd., 1893,* Sec. 2.   If the immigration inspector had received and entertained the affidavits in question, he must have refused admission to the applicant, for the reasons stated above, i. e., the absence of any evidence tending to show that his interest in the firm of Lung Tai Jan was real and appeared in the business and partnership articles in his own name.

This being the case, it does not appear that the said Chop Tin has anything to complain of as to his detention.

The demurrer is allowed on this ground.