|  |  |
|---|---|
| 14 | 93 |
| 124 | 147 |
| 124 | 523 |
| 124 | 557 |
| 126 | 53 |
| 14 | 93 |
| 133 | 38 |
| 133 | 92 |
| 14 | 93 |
| 161 | 239 |
| 14 | 93 |
| 168 | 513 |
| 168 | 516 |
| e168 | 517 |
| e168 | 518 |
| 14 |  |
| f169 | 93 |
| 169 | 67 |
| 169 | 68 |
|  | 71 |

## GULICK v. NEW.

The clerk of the Circuit Court is merely a ministerial officer, and in respect to the approval of official bonds, he has no discretion except to determine whether the security offered is sufficient.

The governor may determine, even against the decision of a board of canvassers, whether an applicant is entitled to receive a commission or not, where the objection to his right to receive it rests upon the ground that a constitutional prohibition is interposed.

If the governor should ascertain that he has commissioned a person who is ineligible to the office, he may issue another commission to the person legally entitled thereto.

Where a majority of the ballots at an election were for a person not eligible to the office under the constitution, it was *held* that the ballots cast for such ineligible person were ineffectual, and that the person receiving the greatest number of legal votes, though not a majority of the ballots, was duly elected, and entitled to the office.

The mayor of a city, under the general law, has jurisdiction as a judicial officer throughout the county; and the voters of the county are, therefore, chargeable with notice of his ineligibility, under the constitution, to any office other than a judicial one, during the term for which he was elected.

A writ of mandate is the proper remedy against a clerk for refusing to approve an official bond.

APPEAL from the *Marion* Court of Common Pleas.

HANNA, J.—*Gulick* filed his complaint and affidavit, averring the same facts involved in the case of *Waldo* v. *Wallace,* 12 Ind. R. 570; and, in addition, that he, *Gulick,* received all the votes cast at said election, in *October,* 1858, for the office of sheriff, other than those cast for said *William J. Wallace;* that on the 29th of *June,* 1859, the

governor of the state issued to him a commission, &c.; and that, on the same day, he took and subscribed the requisite oath, indorsed thereon, and executed, together with sufficient sureties, the bond required by law, &c., and presented the said bond to the defendant, as clerk, &c., to be by him approved, which official duty he refused to perform; wherefore, a mandate is prayed, &c.

The defendant demurred to the complaint, because, upon its face, it shows that *Wallace* was performing the duties of sheriff *de facto*, under color of law, and, therefore, the writ of mandate is not the proper remedy to determine the title to the office, and there is another and ample remedy to determine that question; and because it appears upon the face of said complaint that the plaintiff was not duly elected to the office of sheriff at said election.

The demurrer was sustained.

The demurrer admits the truth of the matters set forth in the complaint, which are well pleaded. The facts set forth bring this case within that of *Waldo* v. *Wallace, supra;* and that case, therefore, determines the first question that arises in this, namely, that *Wallace*, the person shown by the record to have been the competitor of *Gulick*, was ineligible to the office of sheriff at the date of the election.

The demurrer also admits that the complainant received all other votes cast at the election, except those received by *Wallace*, who was ineligible; that a commission had issued to him; that he had taken the oath, &c., and tendered a sufficient bond, the approval of which was refused by the defendant.

The simple inquiry presented to us upon the record, is, what was the official duty of *New*, upon this state of facts? and if he refused to discharge that duty, what is the remedy of the complainant?

As the demurrer concedes that *Wallace* was not eligible to be elected to the office of sheriff, for a limited time, for the reasons given in the record, namely, because he was prohibited from holding any office under the state, other than a judicial office, during that time, by the constitu-

May Term, 1860.

GULICK
v.
NEW.

tion, we cannot perceive the force of the argument advanced by the defendant to sustain his refusal to approve the bond herein, to-wit, that *Wallace* was already inducted into the office, and acting as sheriff; and, therefore, because he was and is wrongfully exercising the duties of the office, affords a sufficient reason for the refusal of the defendant to act. This reasoning is not valid. The clerk is a mere ministerial officer; and in respect to the approval of bonds, which it is made his duty to approve, he has no discretion other than to determine whether the security offered is sufficient. Was it his duty to approve this? The records, of which he is, by law, the keeper, show that but two candidates were voted for at the election for sheriff. The record in this case shows that he was not only constructively, but in fact, cognizant of that, for it contains his official certificate to that effect, and giving the vote of each. It is true, that his records also show that the board of canvassers had certified and declared that *Wallace* was elected; but this certificate is not, under the circumstances of this case, any shield for him in his refusal to act; because he admits, by his demurrer, that *Wallace*, the person therein named, is totally and absolutely ineligible to the office, by virtue of the constitutional prohibition already adverted to.

Looking, then, to the powers and duties of a clerk, and to this case as presented to us on the pleadings, we are of opinion that such a *prima facie* right to the office was made, as entitled the complainant to the privilege of filing his bond, and such as made it the duty of the clerk to act officially in the approval thereof.

In this view of the case, we do not take notice of the fact, nor stop to inquire whether it was the duty of the clerk to take notice, that the highest judicial tribunal in the state had declared the ineligibility of *Wallace*. The facts upon which that ineligibility rests, and the conclusion to that effect, are fully stated in the complaint; and the facts, if not the conclusion deduced therefrom by the pleader, are admitted by the defendant, by his demurrer,

to be true, and the conclusion appears to be silently conceded in the brief of the appellee.

It is urged by the appellee that the action of the board of canvassers of the returns of the election, and the certificate of the clerk based thereon, are the only basis upon which the governor can act in issuing a commission, and it is assumed that he had issued one commission upon such evidence, to-wit, to *Wallace*, and that he had thereby exhausted his power in that behalf.

In *Collins* v. *The State*, 8 Ind. R. 344, it is, in effect, decided by this Court that the secretary of state was not concluded by the action of the governor in issuing a commission, but, when called upon to approve a bond, might determine for himself whether there was a vacancy to be filled, &c. The reasoning offered in support of that decision, would, it appears to us, sustain the governor in determining, even against the decision of a board of canvassers, as to whether an applicant is entitled to a commission or not, where the objection to his right to receive it rests upon the ground that a constitutional prohibition is interposed.

As to the second branch of the objection. It is made the duty of the governor to issue commissions in certain cases, and to certain officers. The sheriff is one of the officers that thus receives a commission upon his election; and we have no doubt that if the governor should ascertain that he had, through mistake or otherwise, improperly issued a commission to one person to fill that office, when in truth it ought to have been issued to another, he may correct the error by issuing one to the person legally entitled thereto.

In the case of *The State* v. *Johnson*, 17 Ark. R. ——, an election had been held for the office of mayor, &c. *Johnson* received the certificate of election from the board of canvassers, and the governor of the state commissioned him, and he was in the discharge of the duties, &c. *Rogers*, his opponent, contested the election before the tribunal provided for hearing, &c., which board decided in

his favor; and upon the governor being properly informed thereof, he also issued a commission to him, &c. The Court say: "After the close of the election, *Rogers* was, to all intents and purposes, mayor *de jure*, and so soon as he was commissioned by the governor, and proceeded to act thereunder, he became mayor *de facto*, and the commission, which had been issued to appellee by the governor, became, and was from that time, virtually destroyed, canceled, and superseded; so that if he continued to act as mayor after that time, he was a naked officer *de facto*, without the commission to give color to his acts as such." The Court did not decide in that case, nor do we decide in this case, as the question is not directly before us, whether the acts of a naked officer *de facto*, acting without color of office, are merely irregular, or whether they are not absolutely void.

May Term, 1860.

GULICK
v.
NEW.

Whether *Gulick* is shown to have been entitled to such commission, remains to be examined. It being conceded that the votes cast for *Wallace* were powerless and fruitless, in effecting the main end arrived at, that is, in electing him, we are still asked to decide that they were so far effective as to prevent the election of any other person; that they were, so far as affirmative results were involved, thrown away, but that negatively they were operative. We are reminded that in our form of government, the majority should rule, and that if the course indicated is not followed, a majority of the voters may be disfranchised, their voice disregarded and their rights trampled under foot, and the choice of a minority listened to. True, by the constitution and laws of this state, the voice of a majority controls our elections; but that voice must be constitutionally and legally expressed. Even a majority should not nullify a provision of the constitution, or be permitted, at will, to disregard the law. In this is the strength and beauty of our institutions. Suppose a majority should persist in voting for a man totally ineligible to take the office of sheriff, what would be the result? As he could not hold the office, either the one capable of holding, receiving the next highest vote, would, as con-

tended by the appellant, be entitled to the office, or there would be a vacancy, as insisted by the appellee. Suppose the proceedings should result in creating a vacancy, then it would remain, greatly to the detriment of public and private interests, or it would, under the statute, have to be filled by the action and choice of, perhaps, two men, which might be, possibly, in direct conflict with the choice of that majority, in every respect. Then, whilst it is true that the votes of a majority should rule, the tenable ground appears to be that if the majority should vote for one wholly incapable of taking the office, having notice of such incapacity, or should perversely refuse, or negligently fail, to express their choice, those, although a minority, who should legitimately choose one eligible to the position, should be heeded. Suppose that, eight years ago, at the first election under our new constitution, when nearly all the offices in the state were to be filled, a majority of the voters in the state, and in the several districts and counties, had voted for persons wholly ineligible to fill the several offices, would those offices have thereby remained vacant? Could that majority, by persevering in that course, have continued the anarchy that might have resulted from such action? Or, rather, is it not the true theory that those who act in accordance with the constitution and the law, should control even a majority who may fail to so act? Whether the same reasoning would hold good where the ineligibility should arise out of some cause other than a constitutional prohibition, is a question we are not now called upon to decide.

We are aware that, as to the question herein decided, there are authorities apparently contradictory, and, therefore, we have attempted to look at the reason of that class we are disposed to follow.

But had the voters notice of the ineligibility of *Wallace?* By one party it is insisted that constructive notice is sufficient; by the other, that it must be actual. It is averred and admitted that, by virtue of his election as mayor of the city of *Indianapolis*, *Wallace* had assumed to discharge the duties of that station, and that among those duties was the

right to hear, &c., all prosecutions, under the laws of the state, for crimes and misdemeanors committed within the county of *Marion*. In other words, that in the capacity in which he then acted, the jurisdiction of his Court was coextensive with the said county.

The statute conferring this jurisdiction was a public act, of which all citizens of the county were bound to take notice. Whether others, not citizens, should be chargeable with such notice, we need not decide. It is true the act contained a provision by which the common council might deprive the mayor of that jurisdiction, by ordering the election of a city judge. Acts 1857, p. 42, §§ 9, 18. But it is averred in the complaint that this was not done; and it is charged that, by virtue of said statute, he was authorized to, and did, take upon himself and exercise the duties of said office of judge of the city Court, by virtue of his election as mayor.

The case stands thus: A general law conferred such jurisdiction upon the mayor as made him a judicial officer. This jurisdiction might (at certain times,) be, by order of the council, conferred upon another. As before stated, citizens of the county were chargeable with notice of the statute. No conflict appears between the mayor and any other person as to the discharge of the duties arising under the statute. He was, as appears by the pleadings, a judicial officer in law, as well as in fact. We are not, then, able to perceive any sound reason why the voters of the county were not chargeable with notice of these facts. They were amenable to his jurisdiction. Subject to be arraigned before him and punished for any infraction of the specified laws. The theory is that every man is bound to know the law; certainly then, every voter, at least within his jurisdiction, was bound to know that the statute gave the mayor certain powers. Courts would be compelled to take notice of who was the incumbent of the office of mayor during the time he discharged judicial functions under the laws of the state, and we are not able to see any good reason leading to the conclusion that citizens, within the jurisdiction

of a judicial office, are not also chargeable with notice of who is the incumbent of that office.

We are of opinion that, so far as the pleadings in this case show, the voters of *Marion* county had sufficient notice of the fact that *Wallace* had been elected to a judicial office, and had taken upon himself the duties thereof, the term of which had not expired at the time an attempt was made to confer upon him the office of sheriff. The votes then given, or attempted to be cast for him, for that office, were ineffectual for any purpose. They had no more effect, in a legal point of view, than if they had been cast for a dead man, or for one who never had a being.

We are further of opinion that upon the face of the pleadings, for the reason heretofore given, it is shown that the governor had authority to issue the commission to *Gulick*, and that it was the duty of the clerk to approve his bond. We have treated these points at some more length than we otherwise would have done, because of the decision in *Collins* v. *The State*, herein cited, in which it was held that the secretary of state was not compelled to approve a bond in a case where a commission had been issued without authority. We have therefore looked to see whether there was authority justifying the issuing of this commission.

As the clerk thus failed to discharge his official duty, it only remains to examine whether the proper remedy has been sought. It is insisted that this is not the appropriate mode of bringing before the Court the question of title to the office.

The statute is (2 R. S. p. 197), that "Writs of mandate may be issued to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins; or, a duty resulting from an office, trust, or station." Among the official duties of a clerk is that of approving (Acts 1857, p. 19; 1 R. S. p. 166) and filing the bond of a sheriff. 2 R. S. p. 9.

The appellee, as clerk, having failed in the discharge of that duty, subjected himself to be proceeded against under this statute; and, in considering whether the governor had

authority to issue the commission to the appellee, and what was his duty and liability in the premises, we have, as before intimated, been compelled, necessarily, to inci- dentally discuss and decide the question of title to the office in the appellee, Mr. *Gulick*, as shown by the record.

The demurrer should have been overruled.

PERKINS, J.—Upon the decision of this cause below, the Court delivered an elaborate opinion. Fully persuaded that that opinion is erroneous, I feel impelled by the re- spect I entertain for the memory of its author, the late Judge WALLACE, and the reluctance with which I disagree to his judgment, to give my reasons why it should be re- versed.

*Wallace* and *Gulick* were opposing candidates for the office of sheriff of *Marion* county, *Indiana*. *Wallace* re- ceived the certificate of election from the board of can- vassers, and obtained his commission from the governor.

His election was contested, and he was decided ineligi- ble to the office. *Gulick* then obtained a sheriff's commis- sion from the governor, upon a certificate that he received a greater number of votes at the election than any other candidate except *Wallace*. He tendered his bond to the clerk, &c., but the clerk refused to act in the premises, whereby *Gulick* was prevented from entering upon the discharge of the duties of the office of sheriff.

*Gulick* then applied to the Common Pleas for a manda- mus to compel the clerk to act, &c. The mandamus was refused, and an appeal was prosecuted to this Court.

The ground upon which the Court refused the manda- mus, was, that *Gulick* was not elected sheriff. The Court admitted that *Wallace* was not sheriff, because, at the time he was voted for as a candidate for that office, the term had not expired for which he had been elected to a judi- cial office under the laws of the state of *Indiana* (*Waldo* v. *Wallace*, 12 Ind. R. 569), which fact rendered him, at the time he was voted for for sheriff, ineligible to that office; but the Court held that the legal consequence of

such ineligibility of *Wallace* was, not the election of *Gulick*, but the election of no one, the election, indeed, of blank; and the question now to be considered and decided is, was the Court below right in its conclusion? was the election a failure, or was *Gulick* elected sheriff?

· The discussion of the question may be by way of stating propositions:

1. Where, at an election, there are opposing candidates for an office, and the candidate receiving the highest number of votes is ineligible, but from a fact or cause which the voters did not and were not bound to know; the result is a failure, and gives no candidate the right to the office, and should be followed by another election.

Probable examples, under this proposition, of cases where the voters might not have knowledge, viz.: infancy of candidate; non-residency; want of naturalization; not of male sex; not of requisite degree of white blood; not in existence. This last was the fact in the case cited from 38 Maine R. app. There, a portion of the people, by mistake, voted for a person not in being. The case of *The State* v. *Swearingen*, 12 Geo. R. 23, was a case of non-residency.

2. Where the voters at the election do know, or are legally bound to know, so that, in law, they are held to know, of the ineligibility of a candidate, the election does not result in a failure; but, in such case, the eligible candidate receiving the highest number of votes is legally elected, and entitled to the office.

Against this proposition we have not found a single authority. Those relied on as such by the Court below, were the cases in 38 Maine R. and 12 Geo. R. *supra*, and *The State* v. *Giles*, 1 Chand. (Wis.) R. 112.

Of the case in *Maine*, we have said enough above.

Of the cases in *Georgia* and *Wisconsin*, it may be remarked, that neither of them involved the point now under consideration, and what is said upon it is mere *dicta*, and neither of the cases cites a single authority.

The point involved in the *Georgia* case was, whether a certain corporate town in that state could elect to office in

it a person not residing within the corporate limits, and it was held that it could.    This closed the case.

The point involved in the *Wisconsin* case was this. The constitution, art. 6, § 4, provided that sheriffs should "be ineligible for two years next succeeding the termination of their offices." A sheriff, in office at the time the constitution was adopted, was elected his own successor under the constitution; and it was held that he was legally elected, and that the disability imposed by the constitution related only to elections and terms held under the constitution. The decision of this point disposed of the case, and what is said beyond it, as in the *Georgia* case, is not improperly, but still is very loosely and carelessly said, and is not binding as authority.

But while there are no authorities adverse to the second proposition above laid down, there is a cloud of them vindicating its correctness. As the attention of the Court below does not appear to have been called to them, we shall here indicate where they may be found and examined.

Mr. GRANT, a late, accurate *English* writer on Corporations, at p. 208, says: "As has been stated, a disqualification patent or notorious, at once causes the votes given for the candidate laboring under it to be thrown away; the same would probably be held to be the case where the electors had the means of knowledge of the candidate's qualification, or the contrary, and might have ascertained the facts if they had pleased." Numerous cases are cited to sustain these positions.

Judge CUSHING, in his *American* work on the Law of Legislative Assemblies, at pp. 66, 67, lays down the same doctrine as deducible from the decided cases.

3. Where the ineligibility of a candidate arises from his holding, or having held, a public office, the people within the jurisdiction of such office, are held in law to know—are chargeable with notice—of such ineligibility; the votes given for such candidate are of no effect; and his highest eligible competitor is elected. Grant on Corp., *supra*, p. 107.—*Biddle* v. *Willard*, 10 Ind. R. 62, on p. 68.

May Term,
1860.

The Court below fell into error on this point by viewing *Wallace* simply in the character of mayor of *Indianapolis.* As mayor, he was simply a corporation officer, and, perhaps, necessarily known as such only within the city limits. But he was more than a city officer. He was a judicial officer, a judge of a Court, with jurisdiction coëxtensive with the county limits, created to administer the general laws of the state to the extent of his jurisdiction. In this capacity of judge, the people of the county were bound to know him, and were bound to know the disability, as to the right to hold other offices, which his character as judge brought upon him by the constitution and laws of the state.

The error of the Court below was as if a man were holding the offices of councilman of the city, and representative in the state legislature; and the Court, in judging of the question of eligibility to other offices, should look at him simply as a councilman, ignoring altogether his legislative office.

*Wallace,* then, at the time he was voted for for sheriff, was ineligible; the people knew it; the votes cast for him were thrown away, and *Gulick* was elected, and has, since the election, been *de jure,* at least, sheriff of *Marion* county.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded, &c.

*L. Barbour, J. D. Howland,* and *H. O'Neal,* for the appellee.