## Jacob K. Lunt *vs.* Elias E. Davison & another.

The determination by the pilot commissioners, under the St. of 1862, *c.* 176, § 4, of the sufficiency of evidence of misconduct of a pilot in Boston harbor to warrant his suspension from office till the next meeting of the trustees of the Boston Marine Society, is not subject to revision on mandamus by this court; and if the pilot is notified of his suspension and has an opportunity to be heard before the trustees at the meeting, and they then decide that his commission ought to be revoked, and the commissioners accordingly revoke it, the revocation is final.

Mandamus to the pilot commissioners, on a petition of Jacob K. Lunt, dated August 1, 1868, which alleged that he was appointed a pilot in the harbor of Boston September 21, 1841

and again July 30, 1855, and held commissions accordingly at the time of the enactment of the St. of 1862, *c.* 176, by § 1 of which he was continued in office; that he acted in the office ever since his original appointment, never resigned it, and knew no reason why he should not be permitted fully to enjoy all its rights and privileges; but that the pilot commissioners now denied his right to act therein; and he prayed for the writ for the purpose of reinstating him in the enjoyment of those rights and privileges.

The return of the commissioners to the first writ admitted that on May 4, 1868, the petitioner was a duly commissioned pilot in the harbor of Boston, but alleged that on that day, "in the exercise of the authority and discretion conferred upon them by law, upon satisfactory evidence to them of misconduct, carelessness and neglect of duty as a pilot on his part as such pilot, they did suspend him until the meeting of the trustees of the Boston Marine Society then next ensuing, and on said day notified said trustees and him of the said suspension; that said trustees, at their next ensuing meeting, to wit, on May 5, 1868, did decide that his commission as such pilot ought to be revoked, and on said day duly notified the commissioners of their decision; and that the commissioners, after being so notified of the action of the trustees in this behalf, on May 18, 1868, did revoke his commission as such pilot, and on said day duly notified him of their said action; all of which actions and doings of said commissioners and trustees were in due course of law;" wherefore the commissioners said that from and after said May 18, and at the time of his petition, the petitioner was not a pilot in the harbor or port of Boston, and had no right to exercise and enjoy said office for that harbor.

To this return the petitioner alleged the following exceptions:

"1. That the respondents do not in their answer allege any particulars or acts of misconduct, carelessness or neglect of duty.

"2. That they do not allege that they ever heard, examined into or decided any complaint against said petitioner, for any acts of misconduct or omissions of duty by him as a pilot.

" 3. That they allege that they suspended the petitioner, and afterwards revoked his commission as pilot, in the exercise of ' the authority and discretion,' conferred upon them so to do, on evidence satisfactory to them of misconduct, carelessness and neglect of duty.

" 4. That they had no authority, as is claimed by them, to suspend and revoke the commission of the petitioner as pilot, at their discretion, without finding him guilty of specific misconduct, carelessness or neglect of duty, upon evidence satisfactory in law, and upon giving the petitioner an opportunity to be heard in his defence."

The case was thereupon heard by *Morton*, J., and reserved for the determination of the full court.*

*D. E. Ware*, for the petitioner.

*M. Storey*, for the respondents.

WELLS, J. At common law, there was no traverse to the return, upon a writ of mandamus. The utmost certainty was required in such returns. For any failure in this respect, the

---

* SECTION 1 of the St. of 1862, c. 176, provides that " all persons holding commissions as pilots in this Commonwealth shall continue to hold the same until the same are revoked or the authority to act under the same is suspended as provided herein."

SECTION 3 authorized the governor to appoint two pilot commissioners on the recommendation of the trustees of the Boston Marine Society.

" SECTION 4. The said commissioners shall grant commissions for pilots in the harbor of Boston to such persons as they shall deem competent to receive them, and who have been approved by the trustees of the Boston Marine Society. They may, upon satisfactory evidence of misconduct, carelessness or neglect of duty, suspend until the meeting of the trustees then next ensuing any pilot who now holds or may hereafter hold a commission as pilot for the harbor of Boston ; and if the said trustees at their said next meeting shall decide that such commission ought to be revoked, the said commissioners may revoke the same, or may at their discretion continue the suspension of such pilot until the next stated meeting of said trustees and no longer for the same offence. They shall receive and hear complaints by and against pilots for the harbor of Boston, and examine into and decide the same ; and generally they shall exercise within the harbor of Boston the same jurisdiction and have the same powers as are now exercised by the commissioners of pilots, except so far as the same are limited by the provisions of this act."

objection was taken by way of exceptions to the sufficiency of the return. If the party suing the writ desired to falsify the return, he could do so only by an action on the case. The English statutes relating to mandamus did not apply to the courts of this country; and such proceedings in this Commonwealth were held to be governed by the common law. *Howard v. Gage*, 6 Mass. 462. By the practice act, the action for false return was abolished, and it was provided that " the person suing the writ may, by an answer, traverse any material facts contained in such return, or demur thereto." St. 1851, c. 233, §§ 51, 52. St. 1852, c. 312, §§ 38, 39. Gen. Sts. c. 145, § 13.

Regarding the exceptions filed by the petitioner in this case as intended for and equivalent to a demurrer, admitting all the facts set forth in the return, the question is, whether those facts justify the removal of the petitioner from his office or appointment as pilot.

From the return of the commissioners, it appears, 1st. that they received evidence, satisfactory to them, of misconduct, carelessness and neglect of duty on the part of the petitioner; 2d. that they thereupon suspended him until the next meeting of the trustees of the Boston Marine Society; 3d. that the petitioner was notified thereof; 4th. that the trustees, at their next meeting, did decide that his commission ought to be revoked; and 5th. that the commissioners thereupon revoked his commission.

This is in strict, literal compliance with the provisions of the St. of 1862, c. 176, § 4, for the removal of pilots for the port of Boston. The objections are, that it does not appear that the petitioner was found guilty of any specific act of misconduct, carelessness or neglect of duty; nor that he had notice of, and opportunity to be heard in his defence upon any complaint setting forth the charge made against him.

The petitioner contends that it should appear from the return what the acts of misconduct or neglect were, of which the commissioners had evidence satisfactory to them, in order that the court might determine whether those acts constituted in law such an offence as to justify the suspension and removal. We

have no doubt that, in ordinary cases of amotion, this ought to be and is the rule. But the provisions of this statute are peculiar; and we are inclined to think that it was the purpose of the legislature to make the tribunal, therein provided, the final and exclusive arbiter in the matter of removals from the office of pilot. The power, both of appointment and removal, for the port of Boston, is confided to the commissioners, subject to the approval and revision of the trustees of the Boston Marine Society. The causes of removal are very general and indefinite, — "misconduct, carelessness or neglect of duty." It is only requisite that the evidence of either of these should be satisfactory to the commissioners. From the nature of the case, this involves not merely the credibility and sufficiency of the proof of the facts relating to the conduct of the pilot, but also the question whether the facts so proved furnish satisfactory evidence of misconduct, carelessness or neglect of duty. The propriety of the conduct of a pilot, in the performance of his official duties, as observed by the commissioners or shown by evidence brought to them, can be judged of best by men having constant familiarity with the circumstances and requirements of the service. If from neglect, inattention, or any want of faithfulness, the service of a pilot should fall short of that which is due to the responsibilities of the position, we think the terms of the statute would authorize the commissioners to regard that deficiency as satisfactory evidence of carelessness or neglect of duty, although no specific act of misconduct should be alleged. The protection against arbitrary removals, without sufficient cause, is to be found in the revision of the action of the commissioners by the trustees of the Boston Marine Society, at their next meeting.

The petitioner was notified of his suspension, and had an opportunity to be heard before the trustees upon the question of his removal, if he saw fit to avail himself of it. We must presume that the hearing before the trustees was fairly conducted; that the grounds of the suspension were properly laid before them, and were adjudged by them to be sufficient and proper causes for the removal. We do not think that adjudi

cation is open to revision in this court, either upon the sufficiency of the alleged causes of removal, or the sufficiency of the allegations.

This conclusion is confirmed by the provisions, in the same statute, for the removal of pilots at other ports. By §§ 9, 10, any pilot for the ports of Salem, Marblehead and Beverly, or the port of Newburyport, may be removed from office by the governor and council, whenever the marine societies of those ports respectively shall certify " that he is incapable of discharging the duties of said office, or is otherwise unsuitable to be continued therein, or that the public interest requires that he should no longer remain in office." Pilots at other ports are removable at any time at the pleasure of the governor and council.

The subsequent clause in § 4 of this statute, requiring the commissioners to " receive and hear complaints by and against pilots for the harbor of Boston, and examine into and decide the same," is a distinct provision from that relating to removals, and, like § 11 of Gen. Sts. *c.* 52, has reference to other objects. No inference should be drawn therefrom as to the formality of proceedings looking only to the exercise of the power of removal.

Upon these considerations, the court are of opinion that the peremptory writ should be *Refused.*