THE STATE OF FLORIDA, EX REL, ROY P. MOODY, RELATOR, vs. W. D. BARNES, COMPTROLLER, RESPONDENT.

1. The authority conferred on the Comptroller by the Constitution of the State, to approve the bonds of county officers, vests him with discretionary judgment, not subject to control by mandamus unless he abuses his discretion.

2. While mandamus is a proper remedy where an officer in the performance of discretionary duty involving a right given by law, bases his refusal of the right on a matter or ground outside of his discretion, it is not available where said matter or ground is within the discretion to be exercised by him.

3. Courts will not use mandamus to control the discretion of an officer for a wrong decision, because of a wrong reason for the decision, unless the reason relates to a matter or question of law not within his discretion.

4. M. was elected to the office of Sheriff and presented his bond to the Comptroller for approval. The Comptroller refused his approval because one of the sureties had withdrawn, and the circumstances in reference to the assent of the others to the withdrawal were such that in his opinion there was serious doubt as to the validity of the bond : *Held*, That the question of the legality of the bond was one directly within his discretion, and his determination in regard to it. even if wrong, cannot be controlled by mandamus.

This is a case of original jurisdiction.

The facts of the case are stated in the opinion of the court.

*M. C. Jordan* for Relator.

*H. H. Buckman and the Attorney-General* for Respondent.

MAXWELL, J.: This is an original proceeding in this court.

The relator avers by his petition for mandamus that he was elected Sheriff of Duval county at the general State election, November 6, 1888, and that with a view to qualify for the office as required by law on the succeeding 2d day of January, he presented to the County Commissioners of said county, a bond for their approval, which he alleges, had good and sufficient security. When presented, A. C. Toll, one of the sureties, appeared before the Board and gave written notice that he desired to withdraw from the bond, whereupon relator withdrew the bond, but afterwards, on January 5, again presented it to the Board for approval, with the assent of his sureties, but the Board rejected it. Then with the consent of the Board he again withdrew the bond, and entered into an additional bond with, as he alleges, good and sufficient security, which in its terms was made a part of the former bond, the two to be deemed and taken together as his bond. These with the assent of his sureties were once more presented on the same day, and were accepted and taken together and approved by the Board. It then being 12 o'clock, noon, he immediately telegraphed the Comptroller that his bond had just been approved by the Board, and that as no train would run the great distance from Jacksonville to Tallahassee till next morning, it would be impossible for him to present the bond for approval by the Comptroller, but that it would be forwarded by the first train. Thereupon he took the oath of office, and on the following morning sent the bond, his oath of office, and his letter of acceptance, together with the commission fee, to be delivered to the proper authorities in Tallahassee. On the 7th of January

his attorney presented these to the State Treasurer in accordance with instructions previously given by the Secretary of State, but the Treasurer declined to accept the same until the bond had been accepted and approved by the Comptroller, whereupon the bond, etc., were presented to the Comptroller, when divers persons from the county of Duval appeared and objected to his approval of the same, on the ground that the conduct of Toll as aforesaid, operated to discharge the other sureties from the bond, and render it void ; which the relator contended was not the effect of said conduct, at the same time representing that all the sureties had full knowledge of Toll's conduct, and had assented to the same, and had authorized the presentation of the bond by the relator as his and their bond.   To avoid the suspicion which had been cast on the bond, relator's attorney offered to procure from the sureties a written statement of as high nature as the bond itself, that they had "full knowledge of the conduct of Toll, and that his said conduct was and is with their assent," and the Comptroller acceding to his request to that end, two instruments of writing signed by the relator and his sureties under seal were procured and subsequently presented, in which they declare and affirm that they are still bound as obligors on the bond, regardless of the conduct of Toll, and said conduct is with their full knowledge and assent.   On further consideration of the matter, the Comptroller refused his approval of the bond of relator, assigning his reasons as follows :

" It appears that one Albert C. Toll, whose name is signed to the bond as one of the sureties, formally withdrew from it as such surety before it was accepted by the Board of County Commissioners, and such withdrawal, in my opinion, affects the liability of the other sureties, unless it is shown that at the time of such withdrawal, each of them

expressly assented thereto. There is nothing on the bond nor anything that properly belongs to, or can be considered with it, that shows such assent on their part. To be a proper bond for approval it must be complete in all the requirements within sixty days after the election of the officer. Any paper writing by the sureties renewing their obligation on the bond and signifying their assent thereto, and knowledge of such withdrawal at a period subsequent to the acceptance of the bond, does not cure the defect. No obligation made nor assent given after the time allowed for completing the bond can be considered, when the time for making it is limited by law.

" Being satisfied from a careful examination of all the papers and facts submitted, and from the legal advice I have received, that, at the expiration of sixty days limited by the Constitution for county officers to give bond and qualify, the instrument under consideration was such as to raise serious doubt as to whether a recovery could be had upon it in the event of a suit, I feel compelled to hold that it is not such a 'legal, sufficient and proper' bond as to justify my approval."

The relator avers that the bond was a " good, sufficient, legal and proper bond," and that the Comptroller had decided that it was filed with him within the time limited by law for the qualification of relator for said office.

The return of the Comptroller is that the facts recited do not entitle the relator to a mandamus against him, and excluding the sufficiency of the bonds, he admits all the facts, except the allegations that he had decided that the bond was filed with him within the time limited by law for the qualification of relator as Sheriff of Duval county.

To the return the relator demurred, partly as to matter of form ; which it is not necessary to consider, but mainly

because it does not show sufficient legal cause for refusing obedience to the alternative writ.

The matter to be determined is whether, under the facts of the case, mandamus will properly lie. The Constitution provides that a Sheriff shall be elected in each county of the State, and in Section 7, Article VIII, that "all county officers, * * * shall, before entering upon the duties of their respective offices, be commissioned by the Governor; but no such commission shall issue to any such officer until he shall have filed with the Secretary of State a good and sufficient bond in such sum and upon such conditions as the Legislature shall by law prescribe, approved by the County Commissioners of the county in which such officer resides, and by the Comptroller. * * * If any person elected or appointed to any county office shall fail to give bond and qualify within sixty days after his election, the said office shall become vacant." The legislative enactment as to those offices directs that the bond shall have not less than two sureties, and shall be given to the Governor and his successors in office, and as to Sheriff: " That the Sheriff of each county shall give bond in a sum to be fixed by the Board of County Commissioners of his county, which shall not be less than $2,000, nor more than $10,000." Acts 1887 Chapter 3724, Section 4.

No objection is made to the bond for defect in any of these requisites, except such as appear in the reasons given by the Comptroller for refusing to approve it.

Whether we can review those reasons and put the Comptroller to further action if we find them insufficient is the first question to be considered.

The approval of a bond by the Comptroller necessarily involves the exercise of judgment and discretion. It is not a ministerial duty of such sort that he can perform it by simply receiving the bond and indorsing his approval thereon.

He must decide whether it is in form, whether the penalty and condition are such as the law requires, and whether the sureties are sufficient, and if there is a question as to its legality he must decide that. The Constitution does not express what is included in "approved * by the Comptroller," but the Legislature in its act above cited amplifies, though really meaning no more. In Section 10 of the act is this: "Every such bond shall be approved by the Board of County Commissioners and by the Comptroller, when they and he are satisfied in their judgment that the same is legal, sufficient and proper to be approved." He must exercise his judgment to satisfy himself, among other things, that the bond is a "legal" one, and having come to the conclusion in this case that it was not, this Court is asked to pronounce that conclusion wrong, and to compel him to act upon our judgment.

The rule long established and governing this State is thus given by Mr. High: "In all matters requiring the exercise of official judgment, or resting in the sound discretion of the person to whom a duty is confided by law, mandamus will not lie, either to control the exercise of that discretion or to determine upon the decision which shall be finally given. And wherever public officers are vested with powers of a discretionary nature as to the peformance of any official duty, or in reaching a given result of official action they are required to exercise any degree of judgment, while it is proper by mandamus to set them in motion and to require their action upon the matters officially entrusted to their judgment and discretion, the courts will in no manner interfere with the exercise of their discretion, nor attempt by mandamus to control or dictate the judgment to be given." High on Ex. Rem., §42; See Towle vs. State, 3 Fla., 202; State *ex rel.* vs. Vanness, 15 Fla., 317; Mc-

Whorter vs. Pensacola & A. R'y Co., 24 Fla., (in 5 So. Rep., 129.)

While the rule is admitted by relator's counsel he claims that there are exceptions to it, but the authority he quotes says: "Perhaps the exceptions are more apparent than real, and involve only cases where the discretion required to be exercised, while to some extent involving the examination of questions of fact and the drawing of conclusions therefrom, is regarded as ministerial rather than judicial." 98 Am. Dec., 375, note. The purport of this may be better understood when the author, instancing a case where the law confers a right upon a person on performing certain acts, and designates another person or some tribunal to concede the right or issue evidence of it, when shown that the acts were done, proceeds to say that if the examining person or tribunal should "capriciously determine that the acts have not been performed" and there is no appeal, the court should "compel the requisite action by mandamus." This is scarcely different from the rule that where the thing to be done is merely ministerial, if the party whose duty it is to do it refuses, the court will compel him to act—a capricious determination being equivalent to a refusal to act. The case of the State vs. Lafayette County Court, 41 Mo., 221, was one where the court evidently applied mandamus because the action of the County Court in refusing to approve a Sheriff's bond was deemed "capricious," if not "arbitrary or oppressive." The case of Stockton Railroad Company vs. Stockton, 51 Cal., 328, was one where the writ was granted because, in the view of the court, "if an official duty is to be performed on the happening of an event, the officer cannot arbitrarily or capriciously refuse to perform it, after the event has happened, on the plea that he is not satisfied that it has happened." Where the court in Virginia vs. Rives, 100 U. S., 313, says that "mandamus

does not lie to control judicial discretion, except where the discretion has been abused," it does not state what would constitute an abuse, but what is usually meant must have been intended—the exercise of discretion capriciously, arbitrarily, or oppressively—and not any impartial and deliberate exercise of it, wrong only from resulting in erroneous judgment. If the discretion in cases like this can be controlled at all, obviously the control must be for reasons like those that give control of judicial discretion, the discretion in a ministerial officer being quasi judicial.

Other cases cited to this point by the counsel for relator, Rex vs. Justices, etc., 1 W. Black., 606 ; Dawson vs. Justices, etc., 2 Hen. & M., 132; Delaney vs. Goddin, 12 Gratt, 266 ; Randolph vs. Stalnaher, 13 Gratt, 523, were cases in which the duties to be performed were merely ministerial and without discretion as to the matter on which action was taken in refusing to perform the duty, and on that account falling under the ordinary rule which authorizes mandamus against a ministerial officer not vested with discretion, to compel him, in case of refusal, to perform the act enjoined by law.

One of these cases, Dawson vs. Justices, etc., will illustrate the reason for granting mandamus when the matter on which action is taken in refusing to perform a duty is not involved in the duty. Under a statute of Virginia it was made the duty of the county Justices to admit deeds to record. Objection was made to the record of a deed offered by Dawson, on the ground that his authority as trustee, to make it and dispose of the property had ceased on the death of the party who created the trust. Without giving particulars there was a question whether the deed could be operative for the purpose for which it was made, and the justices to whom it was presented for record, acting

upon the fact that an injunction had been granted against Dawson to restrain him from making any disposition of the property, under the deed of trust, and thinking Dawson's deed could not be operative, for that reason refused to admit it to record. His application to another court for a peremptory mandamus against the justices to compel them to admit his deed to record, was denied ; but on appeal the Supreme Court directed that the writ be awarded, holding that the duties of the justices, as to that matter, were "merely ministerial to the proof and recording of the deed," and that " the contents of the deed * * are not a subject for their inquiry, much less the operation and effect of it." In other words, when the duty is ministerial only, the officer should not step outside of that to exercise his discretion on something not pertaining to the duty, though affected by its performance, but should proceed, irrespective of the outside matter, to perform the duty, else mandamus will compel him to do so. The other cases are to the same effect, and none of them furnish exceptions to the general rule which forbids courts to assume control of official discretion in its nature judicial or quasi judicial.

A further contention for the relator is, that mandamus is the " proper remedy for compelling the approval of official bonds, where it appears that the officer or the court invested with discretionary authority has acted mistakenly or unwisely by the reason given for refusing to approve, and which thus resolves itself into a question of law." This, as we understand it, is entirely subversive of the rule itself. If official discretion cannot be controlled or overridden by mandamus except for abuse of it, what matters it in any given case that the discretion has been guided by a mistaken reason ? The prohibition to interfere does not lose its force because a wrong reason has led to a wrong conclusion. The books abound in cases where the courts

refuse mandamus notwithstanding the mistake or error of the officer whose discretion is sought to be controlled, and it would be an anomaly to hold that refusal is proper where only a wrong conclusion is reached without giving the reason for it, but not proper if the reason be given and it is found not a good one.

Looking to the authorities quoted to sustain the contention for relator, the first, 41 Mo., *supra*, must be discarded because the writ was granted there to relieve against abuse of discretion. Nelson vs. Edwards, 55 Tex., 389, was a case in which the court said that if the bond offered by Edwards was rejected by the commissioners to approve, because, in their opinion, Nelson was entitled to the office, mandamus would lie—evidently because the commissioners went outside of their discretion in at all considering the controversy between the parties as to which of the two was entitled to the office. Gulick vs. New, 14 Ind., 93, was a case where the clerk whose duty it was to approve Sheriff's bonds, refused because another was in the office claiming title to it. Like the last case, the discretion exercised extended to a question of contested title to office, and the court held that mandamus was proper, as a *prima facie* showing of title was sufficient to entitle the applicant to approval of his bond, otherwise sufficient. Case of Pritchett, 1 Spencer, 134, was another similar case of disputed title to office, as was also the case of Beek vs. Jackson, 43 Mo., 117. Daniels vs. Miller, 8 Col., 542, was a case where the clerk refused to approve an appeal bond because the court held that appeal did not lie. The Supreme Court, holding that the law did not allow appeal in the case, ordered mandamus. State of. Ohio, *ex rel.*, vs. Lewis, 10 O. St. R., 128, was a case where the officers to approve Sheriff's bond refused because in their opinion the bond was not presented within the time for approval required by law. The court, holding that the

commissioners mistook the law as to the time for presenting bonds, granted mandamus. Mobile & Co. vs. Cleveland, 76 Ala., 321, was a case where the clerk refused to approve an attachment bond because the sureties were non-residents of the county. The law of the State not requiring sureties to be residents of the county, the court to relieve against the mistake of the clerk granted mandamus.

The last two cases resting on mistake of law, it is important to observe that it was law not connected with the sufficiency of the bond, as to its form, legality and sureties, and therefore law outside of the discretion given for the approval of bonds. The use of mandamus in such cases does not conflict with the general rule. And in regard to all these cases, it will be seen that what appears to be a departure from the rule is not so in fact. They only check the exercise of discretion when assumed in regard to matters not properly within it, or when mistake is made in law not germane to the discretion.

It remains to adjust the present case to our view of the law as herein expressed.

It cannot be said that the respondent in refusing to approve relator's bond, acted capriciously or arbitrarily. It appears from the petition itself that he was indulgent to relator, giving his counsel, when asked, time and opportunity to present the case in its fullest merits, and even to fortify it by supplemental papers. And respondent in his return, states that he had legal advice to aid him in his decision, so there is every indication that he exercised his discretion with due deliberation and in good conscience, and there is no suggestion that he did not. It is not a case, then, in which it can be justly claimed that the law authorizes mandamus because of capricious or arbitrary action.

Nor is it a case calling for mandamus because respondent went out of the way to exercise his discretion on any

question not properly within it, or because he gave a reason, if a wrong one, for his decision, on a question to which his discretion did not properly reach. In either case, we have seen that mandamus has been allowed. But it should not be here, because the discretion was exercised, and the reason for the decision given, on questions which were of the very essence of the sufficiency of the bond. Was it, after the action of Toll, in withdrawing from it as surety, a legal bond? That was one of the questions, and certainly one of vital importance, on which it was his duty to pass judgment. Another was, did the assent of relator and his sureties to the withdrawal of Toll, and their re-affimance, by subsequent papers of their obligation on the bond, notwithstanding his withdrawal, restore its validity, if that had been lost? The latter question was one addressed to his judgment when he had concluded in his mind that as the matter previously stood, the bond had become invalidated, and it was his duty to decide this also.

Here, then, we have questions to be determined undoubtedly, and necessarily within his discretion. He could not approve or disapprove the bond, one or the other of which the law made it his duty to do—without determining those questions. The distinction between this and the cases referred to is, that in those there could have been approval or disapproval of the sufficiency of the bond without considering the questions on which the refusal to approve was based, while in this, as we have said, this could not have been done. It seems to us that in such a case we are bound by the rule that the discretionary action of officers must be left free from control, unless there has been abuse of discretion.

It results from the foregoing conclusions that it is unnecessary to consider whether or not the respondent was mistaken in his decision on the legality of the bond, for

even if wrong, it cannot be rectified by mandamus. Nor is it necessary to consider other questions presented and argued as for the reasons indicated above, the alternative writ, to which the demurrer reaches back, does not disclose a case within this remedy. The judgment will be, that the alternative writ be quashed, and that the relator pay the costs of this proceeding. High on Extra. Remedies, S. 526.